**Nancy NORMAN, Plaintiff,**

v.

**GANNETT CO., INC., The Detroit News Co., Inc., Defendants.**

**Civ. A. 94–0038 (CRR/PJA).**

United States District Court, District of Columbia.

May 17, 1994.

---

Neil Katz, for plaintiff.

Robert Bernius, for defendants.

*MEMORANDUM OPINION*

ATTRIDGE, United States Magistrate Judge.

Pending resolution by the Court is the motion of the defendants Gannett Company, Inc., and the Detroit News, Inc., for summary judgment.

The plaintiff, Nancy Norman (Norman), has filed suit against her joint employers Gannett Company, Inc., and the Detroit News (hereinafter Gannett) for damages for harassment and discrimination in employment based on her gender. The suit was first filed in the Superior Court charging violations of the District of Columbia Human Rights Act, D.C.Code §§ 1–2501–2557 (1981 & 1993 Supp.) (DCHRA). The Superior Court action was removed to this court by the defendants. Thereafter, the parties consented to proceed for all purposes before a magistrate judge pursuant to 28 U.S.C. § 636(c).

*Background*

This suit involves a number of claims, which fall into two broad categories: claims for sexual harassment and claims for disparate treatment based on gender.

With regard to the sexual harassment claims, Norman contends that the following episodes taken together constitute a hostile work environment: in the spring of 1988, shortly after she began her employment at WUSA–TV, a reporter stood behind her, unbuckled his pants and dropped them to the floor. Neither she nor the reporter said anything. About a year later, WUSA–TV's production manager kissed her on the head

and kissed her on the head again a couple of months later. In July 1990, the assistant producer at WUSA–TV inquired if Norman could work on a Saturday. When Norman tried to change the topic by responding that she had a boy friend, the producer inquired "Who's better, him or me?" A couple of weeks later, the assistant news director asked Norman to work on the 11:00 P.M. news show though the plaintiff contends that there was no work to be done on that shift. In late 1990, the same production manager kissed her for the third time, this time on the side of her head in an elevator. The following summer, a WUSA–TV news director said to another employee, in the plaintiff's presence, that women should not be allowed on the golf course. In the fall of that year, a reporter said to her as they passed in the hall, "let's go away for the weekend and make mad passionate love." In the winter of 1991, an assistant news director asked Norman to get video tapes of war weaponry. When she inquired if he wanted those of American or British weaponry, he responded that she should give both tapes to another tape editor for review, implying that as a woman, he could not trust her judgment. In the spring of 1992, Norman saw other employees in an editing booth viewing videotape. Since it was unusual for that many persons to view a tape together, Norman stopped to join the viewing and saw on the video a naked woman pulling a reporter's pants down. In the summer of 1992, the news director inquired of a recently married male, again in the plaintiff's presence, whether he was training his wife properly.

Over a year later, in September and October of 1993, the plaintiff says that an assistant news director commented to her on three separate occasions that she looked nice and on another occasion that he was pleased with her work. On still another occasion during the same time period, Norman wore a T-shirt covered by a sweater to work, and the assistant news director inquired what was written on the T-shirt. When the plaintiff responded "Mazda LPGA," [Mazda Ladies Professional Golf Association] the director asked her to demonstrate her golf swing.

The defendants contend that no reasonable person could find these sporadic, innocuous incidents and remarks severe or pervasive enough to create an objectively hostile or abusive work environment which altered the conditions of the plaintiff's employment. The defendants also contend that these hostile work environment claims are barred by the one year statute of limitations governing claims under the DCHRA. *See* D.C.Code § 1–2544(a); *Davis v. Potomac Electric Power Co.*, 449 A.2d 278 (D.C.1982) (one year limitations period applies to actions at law commenced under the DCHRA.)

With regard to the disparate treatment claims, the plaintiff contends that she has been discriminated against because of her gender in shift assignments which required her to work six days or more in a row on many occasions without overtime compensation. Norman also alleges gender discrimination evidenced by defendants failure to give her photographic assignments; failure to provide her with the opportunity to participate in doing "series work," and gender discrimination evidenced by the defendants compensating her at a salary less than that paid to male editors.

The defendants contend that they have advanced legitimate non-discriminatory business reasons for the alleged disparate treatment and that the plaintiff has not carried her burden of showing that its defenses are pretextual. Therefore, the defendants argue, they are entitled to judgment as a matter of law.

*Discussion*

The DCHRA provides that it shall be an unlawful employment practice:

(1) To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employee in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee;

. . .

... based on the ... sex, ... of any individual.

D.C.Code § 1–2512(a)(1) (1981 & 1993 Supp.).

The District of Columbia Court of Appeals in *Howard University v. Best*, relying heavily on federal cases interpreting Title VII, held that "a plaintiff establishes a prima facie case of sexual harassment [under the DCHRA] upon demonstrating that unwelcome verbal and/or physical advances of a sexual nature were directed at him/her in the work place, resulting in a hostile or abusive work environment." 484 A.2d 958, 976, 981 (D.C.1984). The court stated that the totality of the circumstances must be considered in determining whether the intent of the statute has been violated. *Id.* at 979. Moreover, any claim under the Act must be brought within one year of the date that the unwelcome conduct occurred. *Davis v. Potomac Electric Power Company*, 449 A.2d 278 (D.C.1982).

The Court finds that the conduct of the defendants supervisory employees as related by the plaintiff, when considered in the totality of the circumstances without regard to any single incident, is sufficient to constitute a prima facie showing that the defendants tolerated a sexually hostile and abusive work environment in violation of the DCHRA. Accordingly, the defendants' motion for summary judgement must be denied unless this aspect of the plaintiff's claim is found to be time-barred.

It is clear that the plaintiff's allegation of hostile work environment is indeed time-barred. In holding that the one year statute of limitations is applicable to the DCHRA, the District of Columbia Court of Appeals emphasized that such a short limitations period is necessary because of the "impermanent nature of the evidence" and so as "to promote rapid compliance with the Act." *Davis*, 449 A.2d at 281.

The defendants argue that any actionable conduct leading to the creation of a hostile or abusive work environment for the plaintiff occurred over one year before this suit was filed on December 8, 1993. The plaintiff retorts that the unwelcome sexual advances continued as recently as September and October 1993. Norman relates that an assistant news director commented on how nice she looked and how he was pleased with her work. On another occasion within the limitations period, the plaintiff appeared at work dressed in a T-shirt bearing the inscription "Mazda LPGA," which was partially concealed by a sweater, and she was asked to demonstrate her golf swing. Norman argues that these incidents, which occurred within one year of suit being filed, give continuing effect to the earlier unwelcome sexual conduct so as to enable the Court to overlook the untimeliness of the complaint as to the earlier conduct.

The "continuing violations" theory "relieves a plaintiff ... from the burden of proving that the entire violation occurred within the actionable period," *Lane v. Ground Round Inc.*, 775 F.Supp. 1219, 1224 (E.D.Mo.1991) *quoting Berry v. Board of Supervisor's*, 715 F.2d 971, 979 (5th Cir. 1983), *cert. denied* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986).

While a plaintiff may recover for violations that antedated the limitations period, (*see McKenzie v. Sawyer*, 684 F.2d 62 (D.C.Cir. 1982)), it is nonetheless incumbent upon the plaintiff to show "that at least one incident of harassment occurred within the limitation period." *Lane* at 1224; *see also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Valetino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982); *Weiss v. International Brotherhood of Electoral Workers*, 729 F.Supp. 144 (D.D.C.1990).

None of the incidents relied on by the plaintiff occurring within the limitations period can be held to constitute unwelcome conduct of a sexual nature resulting in a hostile or abusive work environment. No reasonable person would feel that an offensive or hostile work environment was created merely because a male supervisor or manager complimented a female employee on her appearance without more, or because the same supervisor complimented her on the performance of her work. *See Harris v. Forklift Systems, Inc.*, —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Moreover, the inci-

dent involving the Mazda T-shirt is sexually neutral. The comment: "let me see your golf swing," could just as easily have been made to a male under the same circumstances.

 In a further effort to overcome the untimeliness of her sexual harassment allegations, the plaintiff contends that since she is still employed by the defendants and because the disparate treatment about which she complains is ongoing, she is entitled to the benefit of the "continuing violations" theory so as to preserve her allegations of past unwelcome conduct of a sexual nature.

In order for present employment practices to give rise to a continuing violation thereby permitting recovery for past conduct, there must be an interrelation between the current practice and the past conduct. *See Shepard v. Adams,* 670 F.Supp. 22, 24 (D.D.C.1987); *Scott v. Claytor,* 469 F.Supp. 22, 25 (D.D.C. 1978). None of the present allegations of disparate treatment are related in any manner to the past sexual harassment conduct. There is no common thread connecting one to the other. The allegations of sexual harassment resulting in a hostile and abusive work environment are factually distinct and entirely separate from the plaintiff's allegations of disparate treatment. *See Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d 711, 724–25 (D.C.Cir.1978) (discussing claims relevant to proving ongoing discrimination in the Title VII context).

Norman has not demonstrated that the disparate treatment about which she complains is related to the past sexual harassment she alleges. Nor has she shown that unwelcome sexual conduct against her occurred within one year of December 8, 1993. Therefore, I conclude that the continuing violation theory cannot save the plaintiff's claims of unwelcome sexual conduct occurring outside the limitation period.

I further conclude that material issues of fact exist which preclude resolution of the plaintiff's disparate treatment claim by summary judgment.

*Conclusion*

The defendants motion for summary judgment on the grounds that the sexual harassment claims are time-barred under the DCHRA is be granted. The motion with respect to the disparate treatment claims is denied.