Scott J. RAFFERTY, Appellant/Cross–
Appellee,

v.

NYNEX CORPORATION, et al.,
Appellees/Cross–Appellants.

Nos. 93–7220, 93–7222.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 7, 1995.

Decided July 21, 1995.

Scott J. Rafferty, pro se.

Guy M. Struve, New York City, argued the cause, for appellees/cross-appellants. On brief, were Seth R. Lesser, New York City and Linda C. Thomsen, Washington, DC. Scott W. Muller, Washington, DC, entered an appearance, for appellees/cross-appellants.

Before: WILLIAMS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

Appellant Scott J. Rafferty (Rafferty) sued Telco Research Corporation (Telco), his former employer, and NYNEX Corporation (NYNEX), Telco's parent company, alleging that he was fired because he knew that Telco was engaging in commercial activities that violated a government consent decree binding NYNEX. In his complaint, Rafferty alleged antitrust violations, breach of contract, misrepresentation and wrongful discharge. The district court granted summary judgment to Telco and NYNEX on all claims. Rafferty, a lawyer proceeding *pro se,* appeals, challenging the entry of summary judgment both on the merits and on the ground that the district court was biased against him and interfered with his ability to obtain counsel. All parties appeal the district court's denial of their motions for Rule 11 sanctions. We affirm the district court's grant of summary judgment to Telco and NYNEX, affirm the denial of Rafferty's Rule 11 sanctions motion and reverse the denial of Telco's and NYNEX's Rule 11 sanctions motion.

## I. Background

NYNEX is a regional Bell Operating Company (regional company) subject to an anti-

trust consent decree entered in 1982. *See United States v. American Tel. & Tel. (AT & T)*, 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). In April 1986, NYNEX acquired Telco, which markets telecommunications management software and offers consulting services to businesses. That same month Telco hired Rafferty to serve as a senior vice-president in charge of Telco's consulting division. In November 1986, Telco discharged Rafferty.

Telco asserts that it discharged Rafferty for legitimate business reasons, including its decision to close the consulting division Rafferty had been hired to run. Rafferty's primary allegation is that he was fired because of his concerns that Telco's consulting services violated the *AT & T* consent decree. In June 1987, he sued Telco and NYNEX, alleging violation of the antitrust laws and of the 1982 consent decree, breach of contract, misrepresentation and wrongful discharge. Joint Appendix (JA) 39–53, 75–90. Telco and NYNEX moved for summary judgment. In three separate decisions, the district court entered summary judgment against Rafferty on all claims. JA 595–604, 682–90, 734–35.

In July 1990, the district court first rejected Rafferty's antitrust, consent decree, breach of oral contract and misrepresentation claims. *Rafferty v. NYNEX Corp.*, 744 F.Supp. 324 (D.D.C.1990) (JA 595).[1] In April 1992, after additional briefing by the parties, the court rejected Rafferty's wrongful discharge claim. JA 682. In March 1993, the judge recused himself from the case. Appendix, Sealed Volume at 1016. [**Material under seal.**] Another judge was then assigned to the case.

In April 1993, the court held a status conference with the parties. JA 724–33. At the conference, the court scheduled a hearing for October 22, 1993, and stayed all proceedings until then. JA 727. The court ordered that Rafferty, then without counsel, could show any prospective counsel all documents in the court's public file. JA 728. If Rafferty found counsel willing to take the case, the court indicated that it would consider a motion to allow counsel to review all materials not previously available to him. *Id.* At the conclusion of the October 22, 1993 hearing (JA 736–55), the court dismissed Rafferty's remaining claim alleging breach of his employment contract. JA 734. He also denied Telco's and NYNEX's motion for Rule 11 sanctions against Rafferty, explaining, "I would ordinarily consider an award of sanctions in this case, given what I believe is an egregious abuse of the judicial process. But it seems to me that the defendants rose to the bait every time." JA 749.

Rafferty now appeals. He contends that all of the district court orders should be overturned because the court was biased and because it interfered with his ability to obtain counsel. He maintains that five[2] of his six claims were improperly dismissed. Rafferty asks this Court to vacate the district court orders and to transfer his case from the District of Columbia to the Eastern District of Virginia. Further, he requests sanctions against Telco and NYNEX. Telco and NYNEX cross-appeal the district court's denial of their motion for sanctions against Rafferty.

## II. Discussion

### A. *Alleged Judicial Improprieties*

▮ Rafferty maintains that the original district judge was biased against him and that the bias "continued to taint the proceedings" under the replacement judge. Appellant's Brief at 16. The argument is without

---

1. The lower court prefaced its discussion of the merits with the following remarks:

 [The task of analyzing Rafferty's claims] has been complicated by the fact that the plaintiff who [sic], although a lawyer, appears to have limited familiarity with several of the legal issues and principles involved. Additionally, the basis for plaintiff's reasoning and his conclusions are not always easy to follow ... and, as the Court occasionally notes at appropriate places, he sometimes misrepresents the law, the facts, and the positions of his opponents, and he quotes statements from the court decisions out of context.

 744 F.Supp. at 326–27 (footnotes omitted). Rafferty's appeal suffers from similar deficiencies.

2. Rafferty does not appeal the dismissal of his claim that NYNEX and Telco violated the antitrust laws.

merit. Rafferty offers no evidence that the judge had a conflict of interest or was biased; he merely *infers* bias from unfavorable judicial rulings and from court delays in ruling on pending motions. "[J]udicial rulings ... can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved." *Liteky v. United States,* — U.S. —, —, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Opinions formed by a judge "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Because Rafferty has produced no evidence to satisfy the standard, we conclude that the judge's recusal decision was within his discretion to make. [**Material under seal.**][3] We further conclude that *no* bias infected the proceedings conducted by either judge.[4]

■ Rafferty also argues that both district judges improperly interfered with his efforts to obtain counsel and to represent himself

*pro se.* Initially, Rafferty was represented by Mark C. Del Bianco and R. Alan Luberda. In March 1988, the district court denied Del Bianco's and Luberda's first motion for leave to withdraw as Rafferty's counsel. JA 121–25. The court also struck Rafferty's *pro se* notice of appearance and directed the clerk of court to strike all papers filed by Rafferty himself. JA 123–24.[5] The March 1988 order further provided that "[o]nly those papers filed and signed by plaintiff's counsel of record will be accepted for filing." JA 124. Seven months later Del Bianco and Luberda again moved for leave to withdraw. JA 126–33.[6] This time Rafferty supported his counsel's withdrawal. JA 138–39. In October 1988, the court granted the motion, noting that Rafferty had "so destroyed the attorney-client relationship that the Court has no choice other than to permit the withdrawal." JA 136–37.[7]

Rafferty contends that although the judge allowed Del Bianco and Luberda to with-

3. As the Supreme Court has observed, a judge may ... be exceedingly ill disposed towards the defendant ... [but] the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings.... As Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean childlike innocence. If the judge did not form judgments of the actors in those courthouse dramas called trials, he could never render decisions."
*Liteky,* — U.S. at —, 114 S.Ct. at 1155 (*quoting In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2nd Cir.1943)). While the Court noted that a judge's impressions of counsel ordinarily reflect nothing other than opinions common to every case, the impressions can sometimes so develop that ultimately the judge determines his impartiality may be lost. *See United States v. Kimberlin,* 781 F.2d 1247, 1259 (7th Cir.1985), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986).

4. Even if Rafferty prevailed on his bias claim, we would not transfer his case to another district as he requests. Rafferty maintains that because the recusal order disclosed the existence of his judicial misconduct complaint, the complaint thus became a matter of public record and disabled every district judge in the District of Columbia from impartially adjudicating Rafferty's case. Rafferty maintains that the case should be transferred to the Eastern District of Virginia. *If* other district judges in the District of Columbia

were aware that Rafferty filed a judicial misconduct complaint, that knowledge alone would not establish that they could not be impartial in adjudicating his case. Indeed, if a judge's knowledge, whether actual or constructive, that a complaint had been filed against him or his colleague, without more, were sufficient to require recusal, a litigant could "judge-shop" by filing and then publicly disclosing the filing.

5. The court explained that the litigation was at an advanced stage and that Rafferty would likely be a principal witness at trial. "Should plaintiff be able to engage substitute counsel, and then make a showing that representation by that substitute counsel will not work a substantial injustice to defendants, the Court will entertain this motion for withdrawal once again." JA 123.

6. Del Bianco and Luberda alleged that Rafferty:
repeatedly threatened to sue us, to bring us before bar counsel, to bankrupt us, or to have us disbarred for failing to follow his instructions, even where we explained why, in our professional judgment, the particular course of action he suggests is imprudent or counterproductive to his case, and not required of the attorneys by the Code [of Professional Ethics].
JA 131.

7. The order noted that "if counsel's motion papers are correct, plaintiff has managed to obtain through threats and harassment what he was unable to secure through the proper channels." JA 136.

draw, he refused to let Rafferty proceed *pro se*. The order, however, explicitly contemplated that Rafferty could represent himself. It provided that "[i]n order to minimize the disruption and the prejudice to the defendant that will be caused by the entry of new counsel or *Mr. Rafferty as pro se counsel* at this stage of the proceedings," the discovery agreements negotiated by Del Bianco and Luberda would remain in effect. JA 137 (emphasis added). Indeed, we denied as moot Rafferty's earlier petition for a writ of mandamus directing the district judge to permit him to appear *pro se* because "the district court has permitted Mr. Rafferty to appear *pro se*." *In re Rafferty*, 864 F.2d 151, 153 (D.C.Cir.1988). Rafferty now contends that the clerk of court did not accept his pleadings, apparently under the mistaken belief that the March 1988 order remained in effect. Rafferty has produced no evidence, however, that *if* the clerk of court refused to accept his filings, Rafferty ever called the problem to the judge's attention.

■ Rafferty further maintains that the second judge also prevented him from obtaining substitute counsel by prohibiting him from showing prospective counsel documents covered by a protective order to which he had stipulated. JA 56–64. After the first judge recused himself, the second judge ruled that Rafferty could show potential replacement counsel only those documents in the court's public file, not documents covered by the protective order. JA 728. Rafferty has not explained how the documents in the public file were inadequate to give potential replacement counsel a basic understanding of the case. Moreover, the district court noted that it would consider a motion by Rafferty to allow prospective counsel to review all materials, including those not previously available. *Id.* There is no evidence in the record that Rafferty so moved. Finally, Rafferty could have asked Telco and NYNEX to allow prospective counsel to review protected documents. There is record evidence that Telco and NYNEX did grant permission to

prospective counsel to review protected documents the one time Rafferty requested it. JA 592. In short, there is no basis for us to conclude that the district court prevented Rafferty from hiring substitute counsel.

## B. *Merits*

■ In three separate decisions the district court granted summary judgment to Telco and NYNEX on all of Rafferty's claims. We review these decisions *de novo*. *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). Viewing the facts and all reasonable inferences therefrom in the light most favorable to Rafferty, we conclude that Telco and NYNEX are entitled to judgment as a matter of law on all of Rafferty's claims.[8]

■ First, we hold that Rafferty cannot sue to enforce the consent decree. Unless a government consent decree stipulates that it may be enforced by a third party beneficiary, only the parties to the decree can seek enforcement of it. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C.Cir.1993). Although he was an employee of Telco, a subsidiary of NYNEX, Rafferty was not an intended third party beneficiary of the consent decree. The decree requires the regional companies, like NYNEX, and their employees to comply with its requirements. Section V, to which Rafferty steers our attention, simply directs the regional companies to advise their employees of their legal obligations under the decree. The decree contains no language providing that regional company employees are third party beneficiaries. Moreover, the decree nowhere authorizes a third party to enforce its obligations. Accordingly, Telco and NYNEX are entitled to judgment as a matter of law on Rafferty's claim that they violated the consent decree.

■ We affirm the district court's application of District of Columbia law to Rafferty's other claims. To determine the applicable law, we must follow the choice of law

8. Rafferty now argues that the district court improperly ruled on the summary judgment motion before acting on pending discovery motions. Rafferty, however, did not object to discovery being stayed pending the summary judgment rul-

ing. *See* JA 511 ("Plaintiff accepts the decision to stay discovery and does not seek any further depositions or production before consideration of the pending dispositive motions.").

rules of the forum state. *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C.Cir.1988); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Applying the District of Columbia's choice of law rules, we "evaluate the governmental policies underlying the applicable conflicting laws and ... determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Williams v. Williams*, 390 A.2d 4, 5–6 (D.C.1978). Recognizing that NYNEX's principal place of business is New York and that Telco was incorporated and is headquartered in Tennessee, we nonetheless conclude that the District of Columbia has the greatest interest in resolving Rafferty's claims because he worked at Telco's District of Columbia consulting division at the time he was discharged. Rafferty argues to this court that Tennessee law should apply because he

> entered a contract in New York to work in Tennessee, moved to Tennessee, obtained a Tennessee driver's license, worked in Tennessee for a Tennessee corporation, complained in Tennessee about illegal acts that occurred in Tennessee, resulting in his termination, which also took place in Tennessee.

Appellant's Brief at 43 (footnote omitted). But Rafferty alleged in his complaint that the District of Columbia is the principal place of business of Telco's consulting division and that he was employed by Telco in the District of Columbia. JA 77, 80, 89. And in his opposition to Telco's and NYNEX's motion for summary judgment, Rafferty stated that his employment contract "was entered in New York *to be performed in th[e] District [of Columbia]* by a resident of Maryland." JA 454 (emphasis added). Rafferty will be held to the version of the facts he articulated

in his complaint and subsequent district court filings.

 Rafferty alleged that Telco and NYNEX breached his employment contract by discharging him without cause. JA 85.[9] It is undisputed that although Rafferty had an employment contract with Telco and NYNEX, the contract was never reduced to writing. What is at issue is whether the contract specified a minimum two-year term of employment and therefore afforded Rafferty just cause protection or whether Rafferty was only an at-will employee. We agree with the district court that there is no record evidence of a meeting of the minds on the term of Rafferty's employment.[10] Consequently, Rafferty was an at-will employee. *Choate v. TRW, Inc.*, 14 F.3d 74, 76 (D.C.Cir.) ("an employment relation of unspecified indefinite duration is presumptively employment 'at will,' terminable by either the employer or the employee with or without cause"; "[i]n order to rebut the presumption, the employee must present evidence of a 'clearly expressed' contractual intent on the part of both the employer and the employee"), *cert. denied*, —— U.S. ——, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994). As an at-will employee, Rafferty was "subject to discharge for any or no reason, at the will of either party." *Elliott v. Healthcare Corp.*, 629 A.2d 6, 8 (D.C.1993).

 Rafferty also alleged that A. Theodore Engkvist, the chairman of Telco's board of directors, promised that "NYNEX would offer Rafferty alternative employment within NYNEX or one of its subsidiaries if it closed Telco Consulting." JA 86. According to Rafferty, his discharge constituted a breach of the purported oral contract. Rafferty, however, alleged only that the promise was made "[i]n consideration for Rafferty's continued efforts to develop Telco Consulting."

---

9. Rafferty contends that the second judge improperly reconsidered the recused judge's ruling on this claim. But the original judge simply held that the statute of frauds did not apply and that there was a contract between Rafferty and Telco and NYNEX. 744 F.Supp. at 330. The subsequent ruling did not contradict that holding for it held that there was no evidence that the contract guaranteed Rafferty a two-year term of employment or provided just cause protection. JA 734, 748.

10. In fact, even according to Rafferty, NYNEX offered a two-year term of employment in exchange for a written three-year non-competition provision *to which the parties never agreed*. JA 840–41, 849–51. We note that many of the terms of Rafferty's contract were still under negotiation when he was discharged. JA 990–1002.

*Id.* Because Rafferty was already obligated as a salaried Telco executive to develop Telco Consulting there was no bargained-for exchange. Lacking consideration, the alleged promise is unenforceable. *See, e.g., Clark v. Clark,* 535 A.2d 872, 877 (D.C.1987) (acknowledging consideration is required for modification to agreement). Telco and NYNEX are therefore entitled to judgment as a matter of law on Rafferty's breach of oral contract claim.

 Rafferty also sued for wrongful discharge. JA 89–90. District of Columbia law does recognize "a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's *refusal to violate the law,* as expressed in a statute or municipal regulation." *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 34 (D.C.1991) (emphasis added). The exception applies only when the employee is "forced to choose between violating the regulation and keeping his job." *Id. See also Gray v. Citizens Bank of Washington,* 602 A.2d 1096, 1096–97 (D.C.) (holding exception does not apply to claim that employee was discharged for reporting to employer illegal activity of fellow employee), *reinstated on denial of reh'g,* 609 A.2d 1143 (D.C.1992). Rafferty never alleged that he was discharged because he refused to violate the law. Instead he claimed that he was fired because he "identified violations of the antitrust laws" and requested legal advice and because "NYNEX believed that his termination could allow it to conceal or to continue these violations of the consent decree." JA 89. Rafferty's claim, then, does not fall within the limited exception recognized in *Adams* and is not legally cognizable.

 Finally, Rafferty maintains that he was injured when Telco and NYNEX misrepresented that Telco's annual consulting revenues exceeded one million dollars the year before he was hired and that NYNEX, pursuant to a waiver provision of the consent decree, was authorized to offer the consulting services provided by Telco. JA 87. According to Rafferty, his reliance on the misrepresentations "harmed [him], primarily because it induced him to violate the consent decree, thus exposing him to potential criminal liability, damaging his professional reputation, ... violating his principles" and leading to his termination "in a precipitious [sic] fashion." JA 88. We conclude that Telco and NYNEX are entitled to judgment as a matter of law on Rafferty's misrepresentation claim because Rafferty cannot show non-speculative injury reasonably traceable to the alleged misrepresentations. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 793 n. 22 (D.C.Cir.1983) ("[I]t is elementary that 'speculative' damage will not support an action for common law fraud."), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). There is no evidence in the record that Rafferty has been or will be charged with any criminal offense related to his activities at Telco or that his professional reputation has been damaged. *See Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988) (affirming grant of summary judgment because nonmovant failed to state material facts in dispute "with the requisite specificity and [to] support them with appropriate references to the record before the District Court"). The alleged violation of Rafferty's principles is not a legally cognizable injury. And his discharge was not caused by the alleged misrepresentations. As the district court noted, the termination of his employment at Telco "left Rafferty exactly where he asserts he would have been without the misrepresentation[s]: without a job at Telco." 744 F.Supp. at 331. Accordingly, Telco and NYNEX are entitled to judgment as a matter of law on Rafferty's misrepresentation claim.

## C. Rule 11 Sanctions

 Both parties moved for the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure. The district court denied both motions. We "apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990). We find that the district court did not abuse its discretion in denying Rafferty's motion for sanctions. The original judge denied Rafferty's motion

for sanctions based on Telco's and NYNEX's alleged misrepresentation of facts in their answer to his complaint but the denial was "without prejudice to its renewal, if warranted, following disposition of the summary judgment motions." *Id.* Rafferty never renewed the motion. That judge also described as "frivolous, if not contemptuous" Rafferty's motion for sanctions based on Telco's and NYNEX's alleged interference with his efforts to obtain replacement counsel. JA 639. We find no basis for concluding that Telco or NYNEX so interfered.

 We do find, however, that the district court erred in denying Telco's and NYNEX's motions for sanctions against Rafferty.[11] "A district court ... necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law." *Id.* We have held that once the district court finds that a pleading is not well grounded in fact, not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or is interposed for any improper purpose, "Rule 11 *requires* that sanctions of some sort be imposed." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985) (emphasis added);[12] *see also Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 44 (D.C.Cir.1990) (same); *Saltany v. Reagan*, 886 F.2d 438, 439 (D.C.Cir.1989) (same), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990); *Weil v. Markowitz*, 829 F.2d 166, 171 (D.C.Cir.1987) (same). Thus, once a district court finds sanctionable conduct, it has no discretion *whether* to impose sanctions. *Westmoreland*, 770 F.2d at 1174. It exercises its discretion at that point by selecting an appropriate sanction. *Id.* During the October 23, 1993 hearing, the district court stated, "I would ordinarily consider an

award of sanctions in this case, given what I believe is an egregious abuse of the judicial process [by Rafferty]." JA 749. He declined to impose sanctions because "it seems to me the defendants rose to the bait every time." *Id.* We conclude that it was legal error, and therefore an abuse of discretion, for the district court to decline to award sanctions under Rule 11 after finding that Rafferty egregiously abused the judicial process.

For the foregoing reasons, we affirm the grant of summary judgment to Telco and NYNEX on all of Rafferty's claims, affirm the denial of Rafferty's motion for Rule 11 sanctions against Telco and NYNEX and remand to the district court for the imposition of an appropriate sanction against Rafferty pursuant to Rule 11.[13]

*So ordered.*

---

**11.** Contrary to Rafferty's claim that Telco and NYNEX never moved for sanctions against him, the record establishes that they did so move several times. *See, e.g.,* JA 623–25, 656–68, 672, 681, 702–08, 711–15, 1063–64a.

**12.** Rule 11 of the Federal Rules of Civil Procedure then required, "If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose ... an appropriate sanction...." (emphasis added). Rule 11 was subsequently amended to provide that if a court finds a violation, "the court *may* ... impose an appropriate sanction" (emphasis added), but the amendment

did not take effect until December 1, 1993, and governs only "proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." 146 F.R.D. 404 (Apr. 22, 1993) (Supreme Court order amending the Federal Rules of Civil Procedure). Because the district court fully disposed of Rafferty's claims before December 1, 1993, the amended version of Rule 11 does not apply here.

**13.** We deferred ruling on the appellees' motion to unseal documents until argument; we now deny the motion as moot.