Christina McHenry **LEMPRES, Plaintiff,**

v.

**CBS INC., Defendant.**

**Civil A. No. 95–451 (RMU).**

United States District Court, District of Columbia.

Feb. 16, 1996.

Elaine C. Bredehoft, John M. Bredehoft, Charlson & Bredehoft, Treston, VA, for Plaintiff.

James Coleman, Patrice Alexander Ficklin, Wilmer, Cutler & Pickering, Washington, D.C., Susanna M. Lowry, CBS Inc., New York City, for Defendant.

### *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting Defendant's Motion for Summary Judgment

This matter comes before the court upon defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff's opposition thereto and defendant's reply therein. Plaintiff's action is premised on four claims: (1) that defendant violated the Family and Medical Leave Act (FMLA) by failing to provide plaintiff with assurances that her position would have some permanence to it and by offering her another position; (2) that defendant violated the District of Columbia Human Rights Act (DCHRA) by engaging in discrimination based on race, gender and family responsibilities; (3) that defendant violated the DCHRA by constructively discharging her; and (4) that plaintiff was subjected to an unlawful termination in violation of public policy as expressed by statute or municipal regulation.

After careful consideration of the submissions, the applicable law, memoranda, excerpts from depositions and numerous exhib-

its, both in support of and in opposition to the pending motion, the court concludes the following: that there is no basis to support plaintiff's claim that defendant violated the FMLA because plaintiff was restored to her former position upon her return from maternity leave as required by the Act; that plaintiff's claims brought pursuant to the DCHRA are time-barred; that plaintiff failed to establish that she was constructively discharged; and lastly, that plaintiff's claim of wrongful termination cannot be sustained as a matter of law. Accordingly, defendant's motion for summary judgment is granted. The court will address each of plaintiff's claims in turn.

## I. Factual Background

In 1988, plaintiff, Christina McHenry Lempres (Ms. Lempres), a Black woman, was hired by defendant CBS as an associate producer for the morning news show. Ms. Lempres' duties included identifying and booking guests to appear on the morning news program; preparing a description of guests' backgrounds and their roles in current events covered by CBS. In December of 1992, following the birth of her first child, Ms. Lempres began her first maternity leave. While on maternity leave, Ms. Lempres contacted her supervisor, Barbara Cochran (Ms. Cochran); they discussed plaintiff's return to work. Ms. Cochran offered Ms. Lempres a position as Futures Editor, which plaintiff described as one with "regular hours" and "intended for someone who was not going anywhere fast."[1] Ms. Lempres declined the offer; opting instead to apply for a position as a Capitol Hill producer (Hill Producer).

Hill producers identify newsworthy events occurring on Capitol Hill and brief the Chief Correspondent on Capitol Hill, Bob Schieffer (Mr. Schieffer). This position would entail a promotion from her former position.[2] There were two Capitol Hill producer positions open at the time of plaintiff's application; one in the Senate (Senate Producer), cover-ing news related to the Senate and one in the House of Representatives (House Producer), covering news items pertaining to the House of Representatives. Ms. Lempres was selected as the House Producer and began working in that capacity on May 3, 1993. Ms. Lempres claims that her nonselection to the Senate producer position forms part of defendant's discriminatory treatment towards her.

Mr. Schieffer oversaw the Hill positions and as a result, interacted with the Hill producers in order to develop the news stories Mr. Schieffer was to report. During her six month tenure as House producer, Ms. Lempres complained that she was ignored by Mr. Schieffer, who she alleges assigned her projects that were not as noteworthy as those given to her Senate counterpart. She further claims that Mr. Schieffer did not recognize her contributions and that he did not want to share an office with her. Ms. Lempres claims that these acts also constituted discriminatory treatment because she was accorded different treatment than white producers.[3]

In December of 1993, Ms. Lempres began a second six-month maternity leave. On May 17, 1994, Ms. Lempres contacted her supervisor, Ms. Cochran, to discuss her return to CBS. Ms. Cochran informed plaintiff that a tape producer position was available on the Morning News. Plaintiff and Ms. Cochran also discussed other possibilities for employment, including part-time and per diem work at CBS.[4] On May 24 or 27, 1994, Ms. Cochran contacted Ms. Lempres to invite her unconditionally to her former position as House producer.[5] During the conversations, Ms. Lempres inquired as to the permanence of the position; Ms. Cochran responded by saying that it was as permanent as anything else in the news business.[6] On June 2, 1994, the day before Ms. Lempres was expected to resume employment, she submitted a letter of resignation, claiming

1. Plaintiff's Ex. 1, at pg. 110.

2. Plaintiff's Ex. 1, at pp. 119–120.

3. Plaintiff's Ex. 1 at pp. 208–209.

4. Plaintiff's Ex. 2 at pp. 362–65.

5. Plaintiff's Ex. 2 at pg. 378.

6. Defendant's Ex. A at pg. 163.

that she had no choice but to resign because of the discriminatory treatment she had received during the six months she worked as the House producer; the offer of the Futures Editor position before returning from her first maternity leave and her nonselection to the Senate producer position.

## II. Discussion

### A. Legal Standard

Summary judgment is appropriate when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In general, the moving party bears the burden of demonstrating to the court the absence of any genuine dispute as to material facts. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). However, if the evidence offered by the opposing party is "merely colorable" or "not significantly probative," summary judgment is still appropriate. *Richardson v. National Rifle Ass'n,* 871 F.Supp. 499, 501 (D.D.C.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–250, 106 S.Ct. at 2511). It is the objective of the summary judgment procedure to "isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–324, 106 S.Ct. at 2553.

Further, if a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, Rule 56(c) mandates the entry of summary judgment. *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552–53. "In such a situation there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Summary judgment shall be granted in favor of defendant, because plaintiff in this case has failed to demonstrate the existence of elements essential to her claims and on which plaintiff will bear the burden of proof at trial and because there are no material facts in dispute.[7]

### B. Family and Medical Leave Act Claim

In Count 1 of her complaint, Ms. Lempres alleges that CBS "discriminated against [her] on account of her pregnancy ... with respect to terms, conditions, and privileges of Lempres' employment at CBS ... in violation of the Family Medical Leave Act of 1993." 29 U.S.C. §§ 2601–2654.[8] Congress enacted the FMLA to assist families in balancing the demands of the workplace with the needs of the family in a manner that minimizes the potential for gender-based employment discrimination. The Act ensures that the leave is available for eligible medical reasons (including maternity leave) and for compelling family reasons without regard to the gender of the employee. 29 U.S.C. § 2601(b). Toward that end, the FMLA provides eligible employees, with certain exceptions, the right to reinstatement to their former position or an equivalent one upon return from the approved leave.[9]

■■■ Ms. Lempres avers that CBS' refusal to provide her with an assurance that,

---

7. The court notes plaintiff's acknowledgment that there are "few, if any" factual disputes. Rather, plaintiff posits that "CBS is wrong on the law." Plaintiff's Opposition at pg. 1.

8. The FMLA requires that in order to be eligible for leave, an employee must provide her employer with a minimum of 1250 hours of service in the twelve-month period preceding the leave. 29 U.S.C. § 2611(2). For purposes of the present motion, the court assumes (since no contrary evidence has been presented) that plaintiff satisfies this requirement.

9. Section 2614(a)(1) of the Act provides, in pertinent part:

(1) ... any eligible employee who takes leave under [this Act] shall be entitled, on return from such leave:
  (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
  (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

upon her return from maternity leave, her House position would have some permanence to it violates the FMLA. Specifically, plaintiff refers to a May 1994 telephone conversation during which she and Ms. Cochran discussed various employment alternatives at CBS.[10] The Act clearly states that "[n]othing in this section shall be construed to entitle any restored employee to—(B) any rights, benefit, or position of employment, other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."[11] Nothing in the definition of the term "employment benefits", as defined by the Act, includes the right to assurances of permanent employment or to assurances that a certain position will have some permanence to it.[12] The parties do not dispute the fact that Ms. Lempres worked for CBS under an employment contract for a determinable length.[13] Further, both parties agree that Ms. Lempres was offered her former position as House producer before her return from her second maternity leave by way of a telephone conversation with her supervisor Ms. Cochran.[14] In fact, the individual who temporarily replaced Ms. Lempres had a contract with CBS that specifically provided for a duration of employment co-extensive with Ms. Lempres' maternity leave,[15] as required by the regulations.[16]

Ms. Lempres' deposition attests to the fact that Ms. Cochran never told plaintiff that the terms, responsibilities, benefits, title or salary would in any way be changed from those provided by her employment contract.[17] Plaintiff's return was unconditional.[18] Plaintiff presented no evidence to show that she would have been employed by CBS in a more permanent fashion had she not taken maternity leave. Finally, the FMLA does not require employers to give returning employees any assurances of job security to which they would not have been entitled, prior to taking maternity leave.[19] Accordingly, the court concludes that CBS did not violate the FMLA.

### C. District of Columbia Human Rights Act

#### 1. Continuing Violation

In Count II of her complaint, plaintiff alleges that the defendant discriminated against her during the course of her employment based on her race, gender, and family responsibilities in violation of the DCHRA. In Count III, plaintiff asserts that she was constructively discharged from her employment, also in violation of the DCHRA. Defendant argues that these claims are time-barred. Civil actions under the DCHRA must be filed within one year of the occurrence of the unlawful discriminatory practice or the discovery of it.[20] Ms. Lempres filed

---

10. The court notes that the Act specifically allows for an employer to require employees to periodically report to the former on the employee's status and intention to return to work. 29 U.S.C. § 2614(a)(5). In addition, the "FMLA does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule or position which better suits the employee's personal needs on return from leave, or to offer a promotion to a better position." 29 C.F.R. 825.215(e)(4).

11. 29 U.S.C. § 2614(a)(3)(B).

12. 29 U.S.C. § 2611 states, in pertinent part, The term "employment benefits" means all benefits provided or made available to employees by an employer, including group life insurance, health insurance, disability insurance, sick leave, annual leave, educational benefits, and pensions, regardless of whether such benefits are provided by a practice or written policy of an employer or through an "employee benefit plan", as defined in section 1002(3) of this title.

13. Complaint at ¶ 18.

14. Plaintiff's Ex. 2, pg. 377.

15. Defendant's Ex. B, pg. 2.

16. *See* 29 C.F.R. § 825.214.

17. Plaintiff's Ex. 2, pg. 378.

18. Plaintiff's Ex. 2, pg. 391.

19. *See, Niemiec v. H & K Inc.,* 1995 WL 465683 (E.D.Wis.1995) (The court there granted summary judgment in favor of the defendant because plaintiff failed to present evidence from which a rational fact finder could determine that her employer would not have fired her for backlogs and inaccuracy had she not taken her leave.)

20. D.C.Code § 1–2544(a); *see also, Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392, 399 (D.C.1991).

her complaint on March 3, 1995, therefore any acts of discrimination must have occurred between March 3, 1994 and March 3, 1995. Ms. Lempres had only two contacts with CBS during the relevant time frame, namely two telephone conversations with her supervisor, Ms. Cochran. Plaintiff maintains that these two contacts form part of a continuing course of discriminatory conduct which included the discriminatory treatment she allegedly suffered during the six months in 1993 that she worked as the House producer (before taking her second maternity leave); as well as other alleged discriminatory treatment she suffered before that date. The acts and events that allegedly occurred in 1993 and before fall outside the limitations period.[21] Consequently, to sustain her discrimination claims under the DCHRA, plaintiff attempts to avail herself of the continuing violation theory.

The court must employ a two-step inquiry in determining whether plaintiff has asserted a viable continuing violation claim. First, the court must determine whether an actual violation of the DCHRA occurred during the statutory period.[22] If the court concludes that an actual violation occurred during the limitations period, it must then determine whether "the discriminatory act either was part of a series of related discriminatory acts or was caused by a discriminatory system in effect both before and during the limitations period." *Id.*[23] Plaintiffs claims pursuant to the DCHRA are time-barred because she has failed to establish that a discriminatory act occurred during the limitations period.

To establish a prima facie case of discrimination under the DCHRA, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) employees who were not members of the protected class were not subjected to similar treatment.[24] While plaintiff is a member of a protected class, she has not demonstrated that the two telephone conversations resulted in an adverse employment action. The court therefore need not address the third prong of the prima facie case.

### (a) The May 17, 1994 Conversation

Plaintiff argues that she was being steered into a "mommy track" position, because in the May 17 conversation, Ms. Cochran addressed the possibility of Ms. Lempres working part-time at CBS. It is undisputed that plaintiff initiated this conversation with Ms. Cochran, during which they discussed employment options available to plaintiff upon the latter's return to work the following month.[25] Plaintiff's deposition testimony makes it clear that she was interested in part-time work and asked her supervisor about all available options.[26] Plaintiff even researched one of the alternative positions, but in the end decided against opting for it. There was no adverse employment action taken against her during this conversation. The court thus concludes that the first telephone conversation did not constitute a discriminatory act.

### (b) The May 27, 1994 Conversation

On or about May 27, 1994, the second conversation took place. Ms. Cochran initiated the call to advise Ms. Lempres about CBS' expectation that she assume her Hill producer position upon her return from maternity leave. It is undisputed that plaintiff was offered her former position, with no alterations in benefits, responsibilities, title or salary.[27] Moreover, the fact that defen-

---

21. These alleged incidents include Ms. Lempres' offer to a Futures Editor position, the treatment accorded by Mr. Schieffer during the six months as House producer and her nonselection for the Senate producer position.

22. *Palmer v. Kelly*, 17 F.3d 1490, 1496 (D.C.Cir. 1994) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)).

23. Plaintiff does not alleged that the alleged discriminatory act was part of a discriminatory system.

24. *See, e.g., Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C.1993).

25. Plaintiff's Ex. 2, at pp. 359, 371.

26. Plaintiff's Ex. 2, at pp. 371–372.

27. Plaintiff's Ex. 2, at pg. 378.

dant did not guarantee any type of permanence vis-a-vis plaintiff's position does not constitute a discriminatory act. Plaintiff, has therefore, failed to establish that either of the two telephone conversations were independent discriminatory acts. Consequently, she has failed to establish the first element of a viable continuing violation claim.

▇ The court further notes that plaintiff has failed to establish that the telephone conversations are in any way related to the past discrimination that she allegedly suffered during her six month tenure as House producer. "In order for present employment practices to give rise to a continuing violation thereby permitting recovery for past conduct, there must be an interrelation between the current practice and the past conduct." [28] The allegations must be substantially related and concern the same subject matter.[29] Moreover, the same discrimination must pervade the series of events.[30] It is not sufficient to simply show "a series of allegedly discriminatory actions against the same employee, even with the same alleged motive such as ... discrimination." [31]

Ms. Lempres provides no evidence linking the events that occurred outside the limitations period, that is during the six months in 1993 that she worked as House producer or the treatment she received prior to that date, with the two phone calls. Plaintiff asserts that certain acts of discrimination occurred during the limitations period. Specifically, CBS' offer to place plaintiff in an inferior position and defendant's failure to give her adequate assurances that if she returned to her former position as House producer, that position would have some permanence.

However, the supervisors involved in the two sets of circumstances were different; the alleged discriminatory nature of the acts also differs; and there is no common thread connecting the past events with the two phone calls that took place in May in 1994. As a result, plaintiff has failed to establish both components necessary to maintain a viable claim pursuant to the continuing violation theory.

**2. Constructive Discharge Claim**

▇ In order for plaintiff to sustain her claim of constructive discharge, she must offer evidence that she was discriminated against, and that defendant deliberately made working conditions so intolerable that plaintiff was forced to resign.[32] Working conditions must be such that they "would lead a reasonable person to resign." [33] Ms. Lempres alleges that such intolerable conditions existed during the six months she worked as House producer. However, those alleged conditions occurred outside the one year statute of limitations for claims brought pursuant to the DCHRA and therefore are time-barred since plaintiff has failed to establish a viable claim based on the continuing violation theory.

▇ Plaintiff's reliance on the two telephone calls to establish her constructive discharge claim is similarly misplaced. Specifically, she asserts that "the straw that broke the camel's back and which forced Ms. Lempres' resignation—was the May 1994 refusal by CBS to offer assurances to Ms. Lempres respecting her position." [34] However, as this court previously concluded that neither telephone conversation constitutes a discriminatory act. *See Section C–1(a)(b),*

28. *Norman v. Gannett,* 852 F.Supp. 46 (D.D.C. 1994) (citing *Shepard v. Adams,* 670 F.Supp. 22, 24 (D.D.C.1987)).

29. *Id.* at 50.

30. *Milton v. Weinberger,* 645 F.2d 1070, 1076 (D.C.Cir.1981).

31. *Stoller v. Marsh,* 682 F.2d 971, 975 (Cir.1982).

32. *Arthur Young & Company v. Sutherland,* 631 A.2d 354, 362 (D.C.1993) (citing *Atlantic Rich-*

*field v. D.C. Commission on Human Rights,* 515 A.2d 1095, 1101 (D.C.1986)).

33. *Id.* The standard is an objective one and requires proof that a "reasonable person" in the employee's position would have felt compelled to resign. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1995). "The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." *Id.*

34. Plaintiff's Opposition to Summary Judgement Motion, pg. 20.

 

*supra.*[35] Moreover, no reasonable juror could find that defendant's failure to assure plaintiff that her position would have some permanence to it rises to the level of intolerable conditions which would compel a reasonable person, in plaintiff's position, to resign.

### D. Wrongful Termination Claim

Plaintiff alleges, in Count IV of her complaint, that the defendant unlawfully terminated her via the constructive discharge that she alleges took place, in violation of public policy as articulated by the DCHRA, FMLA and Title VII of the Civil Rights Act of 1964.[36] Plaintiff's claim fails for a number of reasons. She has failed to establish a prima facie case of discrimination under any of the above mentioned Acts.[37] She suffered no adverse employment action.

In addition, the public policy exception to the general rule that an at-will employee can be terminated without cause only applies to at-will employees.[38] It is undisputed that plaintiff had a contract for a determinable length of time with defendant. Therefore, Ms. Lempres is not an at-will employee.[39] Furthermore, the public policy exception is very limited in its scope. It is recognized only when the sole reason for the discharge of the employee is the latter's refusal to violate the law, as that law finds expression in a statute or municipal regulation.[40] Finally, as the District of Columbia Court of Appeals stated, efforts to expand this "one very narrow exception ... holding

that only the *in banc* court can authorize any further departure." [41] Consequently, plaintiff's wrongful termination claim fails as a matter of law.

Therefore, pursuant to the court's order dated February 9, 1996, Defendant's Motion for Summary Judgment is hereby **granted.**

---

**35.** Moreover, even if discrimination is established, it does not follow that a constructive discharge has been effectuated. Discrimination alone is not sufficient to allow for a finding of constructive discharge. *Clark v. Marsh,* 665 F.2d 1168, 1173 (D.C.Cir.1981) (citing *Bourque v. Powell Electrical Manufacturing Company,* 617 F.2d 61 (5th Cir.1980)). The employee must suffer an adverse employment action. *Bristow v. Daily Press Inc.,* 770 F.2d 1251, 1254 (4th Cir. 1985). Plaintiff in this case has failed to establish that she was the victim of discrimination or that she suffered an adverse employment action. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson,* 477 U.S. at 243 at 252, 106 S.Ct. at 2507 at 2512.

**36.** As amended, 42 U.S.C. § 2000e *et seq.,* including the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e–(k).

**37.** To establish a prima facie case for wrongful termination under the FMLA, plaintiff must make a showing similar to the showing required under the ADA, Title VII and DCHRA. *See, e.g., Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253, 258 (D.D.C.1995); *Barth v. Gelb,* 2 F.3d 1180 (D.C.Cir.1993).

**38.** *See, Rafferty v. Nynex Corp.,* 60 F.3d 844 (D.C.Cir.1995).

**39.** *Id.* 60 F.3d at 851 (D.C.Cir.1995).

**40.** *Thigpen v. Greenpeace, Inc.,* 657 A.2d 770, 771 (D.C.1995) (citing *Adams v. George W. Cochran,* 597 A.2d 28, 34 (D.C.1991)).

**41.** (*Atkins v. Industrial Telecommunications Association, Inc.,* 660 A.2d 885, 889 n. 10 (D.C. 1995) (internal citations omitted)).