SECURITIES AND EXCHANGE
COMMISSION, Appellee,

John H. Lomax, et al., Appellants,

v.

PRUDENTIAL SECURITIES
INCORPORATED,
Appellee.

No. 97–5109.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 20, 1998.

Decided Feb. 20, 1998.

Graeme W. Bush, Washington, DC, argued the cause for appellants, with whom Albert G. Lauber, Carl S. Kravitz and Peter Van Lockwood were on the briefs.

Arthur F. Mathews, Washington, DC, argued the cause for appellee Prudential Securities Incorporated, with whom Stephen F. Black was on the brief.

Jacob H. Stillman, Associate General Counsel, Washington, DC, argued the cause for appellee Security & Exchange Commission, with whom Richard H. Walker, General Counsel, Susan S. McDonald, Senior Litigation Counsel, and Paul Gonson, Solicitor, were on the brief.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

Appellants John H. Lomax, Ann D. Lomax, Emory C. Camp, and Robert A. Callewart appeal the denial of their motion to intervene in the ongoing enforcement of a consent decree negotiated by the Securities and Exchange Commission and Prudential Securities Inc. Under the decree, Prudential provided a "claims resolution process" as an alternative to judicial relief for certain investors whom Prudential had allegedly defrauded. Appellants, former investors, voluntarily submitted their claims to this process and received damage awards, but they then sought to intervene as representatives of a class in the enforcement of the consent decree, claiming that Prudential had violated the consent decree by making initial damage award offers that were improperly low. In their "complaint in intervention," they sought enforcement of their interpretation of the decree's terms through common law claims based in contract, fraud, and unjust enrichment. Under *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and its progeny, the district court denied intervention as of right under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Rule 24(b). In light of the express language in the consent decree indicating the parties' intention not to confer standing on third parties to enforce the decree, we affirm.

I.

On October 20, 1993, the Securities and Exchange Commission ("SEC" or "the Commission") sought an order under section 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e) (1988), and other equitable relief against Prudential Securities Inc. ("Prudential") on the ground that Prudential had violated federal securities laws and an earlier SEC order by "misrepresent[ing] speculative, illiquid limited partnerships as safe, income-producing investments suitable for safety-conscious and conservative investors." As a result, the Commission asserted, Prudential "sold limited partnerships to a significant number of investors for whom the investments were not suitable." Concurrently, the Commission and Prudential submitted a consent decree, which the district court approved on October 21, 1993.

Under the terms of the consent decree, Prudential instituted a process to resolve the claims of the approximately 340,000 investors whom Prudential had allegedly defrauded over an eleven year period through offer and sale of interests in over 760 limited partnerships. Under this claims resolution process, an investor could choose to submit claims to Prudential for evaluation of their merit, after which Prudential would decide to make a settlement offer or to reject the claim. Any

investor who was dissatisfied with this initial offer, or whose claim was rejected, could submit the claim to binding arbitration, subject to appeal to the court-appointed Claims Administrator. Alternatively, such an investor could forgo arbitration and pursue judicial relief. Similarly, the consent decree did not affect the rights of investors who did not submit their claims to Prudential for evaluation; these investors retained all rights to seek relief in the courts. Any investor who chose to submit a claim to arbitration was required, however, to sign a form acknowledging that the arbitrator's decision was final, subject to appeal to the Claims Administrator, and any investor who accepted the initial settlement offer was similarly required to sign a release preventing any future legal action against Prudential based on the limited partnership interests.

Other terms of the consent decree further show the intent of the Commission and Prudential that the claims resolution process be final for those accepting settlement offers or entering binding arbitration. Paragraph nine of the decree provides that "nothing herein shall be deemed to confer standing upon any persons other than plaintiff COMMISSION, defendant [Prudential] and the CLAIMS ADMINISTRATOR." Paragraph twelve of the decree adds that, "[e]xcept as explicitly provided in this FINAL ORDER and the CONSENT, nothing herein is intended to or shall be construed to have created, compromised, settled or adjudicated any claims, causes of action, or rights of any person whomsoever, other than as between the COMMISSION and [Prudential], in accordance with the CONSENT."

Following district court approval of the consent decree, Prudential notified its investors that it had established this claims resolution process. In this notice, Prudential explained the origin of and reasons for the process and outlined its basic terms. The explanation noted that Prudential had "established court-supervised procedures pursuant to the SEC settlement to resolve claims for compensatory damages." Prudential stressed that participation in the process was voluntary: "If you decide not to resolve your claim through the [process], your rights to pursue any legal remedies will not be restricted or expanded in any way." Prudential also made clear that investors who accepted initial settlement offers had to release Prudential from future liability with respect to the limited partnership interests, and that investors who submitted claims to binding arbitration had to acknowledge that "[t]he arbitrator's awards shall be final and binding on the parties with respect to all claims submitted," subject to appeal to the Claims Administrator.

Over the course of four years, Prudential paid more than $938 million to over 110,000 investors pursuant to the consent decree. The Claims Administrator filed quarterly reports in the district court on the progress of the claims resolution process, addressing various issues, including the net tax benefit policy of concern to appellants,[1] and describing the procedures taken to ensure the fairness and efficiency of the process. The claims resolution process was nearly complete when, on August 1, 1996, appellants filed a motion to intervene and a "class complaint in intervention" on behalf of themselves and a class of similarly situated claimants.[2]

Appellants had purchased limited partnership interests through Prudential in 1980, 1983, and 1984.[3] All submitted their claims

---

1. Appellants asserted in their memorandum in support of the motion to intervene that the Claims Administrator had stated in his Third Quarterly Report that Prudential was to account for claimants' tax benefits on a net basis, so that tax benefits in early years would be offset by tax costs incurred later. Appellants quoted the following language from the Third Quarterly Report:

> In general, purported tax benefits will not be allowed to reduce offers or awards if they will be offset by recapture or offset in later years. Suspended losses are not allowed unless they can be used advantageously by claimants.

2. Originally, the claims resolution process was scheduled to be completed around October 20, 1996.

3. Notably, in the consent decree, Prudential agreed not to assert a statute-of-limitations defense against any claimants who entered the claims resolution process. The Commission hypothesizes that this provision of the consent decree was the only reason appellants were able to receive any compensation for their claims at all, and appellants do not contest this.

to Prudential under the consent decree, and, after receiving initial settlement offers, consented to binding arbitration. Two of the appellants, John H. Lomax and Ann D. Lomax, settled before the arbitrator made an award, while appellants Emory C. Camp and Robert A. Callewart received arbitration awards that they appealed, unsuccessfully, to the Claims Administrator. In a memorandum in support of their motion to intervene, as well as in their class complaint in intervention, appellants asserted that Prudential had intentionally and systematically understated the damages due to claimants under the consent decree. Specifically, appellants claimed that in calculating settlement offers pursuant to the terms of the consent decree, Prudential did not properly account for the tax that investors would have to pay on their damage awards or for the tax that investors would have to pay when realizing the "residual value" of their investments. Appellants alleged that Prudential had breached its agreement to resolve their claims fairly, intentionally defrauded them through misrepresentations and omissions, and was unjustly enriched as a result of its miscalculation of tax benefits. Asserting that the Commission and the Claims Administrator refused to rectify the problem, appellants sought judicial orders directing Prudential to enforce the terms of the consent decree as they interpreted it and to make the additional claims payments.

■ The district court denied the motion to intervene. Assuming the truth of the facts alleged in appellants' complaint,[4] the district court ruled that they could not show a legally protected interest in the proceedings between the Commission and Prudential because, under *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and this court's interpretations of it, third party beneficiaries of a government consent decree may not enforce it when the consent decree contains unambiguous language establishing that the government did not intend them to have enforcement rights. The district court concluded that their common law claims were in reality claims for enforcement of the consent decree. Consequently, the district court concluded that appellants had no right to intervene under Federal Rule of Civil Procedure 24(a)(2), or, for the same reason, Rule 24(b).[5]

## II.

■ Parties have the right under Rule 24(a)(2) to intervene in an action if they meet four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests. *See Williams & Humbert, Ltd. v. W. & H. Trade Marks (Jersey), Ltd.*, 840 F.2d 72, 74 (D.C.Cir.1988). Consideration of the second requirement alone is sufficient to dispense of the instant appeal.[6] We review the district court's resolution of a legal question in the context of a denial of a motion to intervene *de novo, see Massachusetts Sch. of Law v. United States*, 118 F.3d 776, 779 (D.C.Cir. 1997), and we affirm.[7]

---

4. "An application to intervene should be viewed on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *Williams & Humbert, Ltd. v. W. & H. Trade Marks (Jersey), Ltd.*, 840 F.2d 72, 75 (D.C.Cir.1988).

5. The district court rejected the Commission's argument that section 21(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(g) (1988), bars intervention in enforcement actions brought by the Commission. The Commission does not press this argument on appeal. The Commission does contend on appeal that any order reviewing the arbitration awards would violate section 10 of the Federal Arbitration Act, 9 U.S.C. § 10

(1988), but given our analysis, we have no need to address this argument.

6. Prudential also disputes whether appellants have shown the Commission to be an inadequate representative of their interests.

7. Our review of the district court's denial of permissive intervention under Rule 24(b)(2) is for abuse of discretion, *see Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C.Cir. 1997), and we find none. Rule 24(b) permits the district court to allow intervention "(1) when a statute of the United States confers a conditional right to intervene; or (2) when the applicant's claim or defense and the main action have a question of law or fact in common." FED.

■ Our inquiry into the enforcement rights of third party beneficiaries to consent decrees begins with *Blue Chip Stamps*, in which the Supreme Court decided that the protections against insider trading codified in the Commission's Rule 10b–5 apply only to actual purchasers and sellers of securities· and not those who are merely offered a stock. *See Blue Chip Stamps*, 421 U.S. at 725, 95 S.Ct. at 1920. The case involved an antitrust consent decree and, in the course of ruling that those not involved in an actual sale of stock had no legitimate claim, the Court held that "a well-settled line of author· ity from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Id.* at 750, 95 S.Ct. at 1932.

Subsequent decisions in this court have narrowed the effect of the broad language in *Blue Chip*, but not enough to allow these appellants to enforce the terms of this con· sent decree. In *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C.Cir.1993), the court held that nonunion pilots who were not parties to a consent decree between a union and another group of pilots could sue the union to enforce the terms of the consent decree. *See id.* at 286–89. The court emphasized, however, that its holding did not imply that all third parties could seek judicial enforcement of the terms of consent decrees;. this case was special because the consent decree established a trust and named the plaintiff nonunion pilots as beneficiaries. *See id.* at 285. The court interpreted *Blue Chip* only to prohibit enforcement by *incidental* third party beneficiaries, *see ·id.* at 288, whereas "*intended* third party beneficiaries of a consent decree have standing to enforce the decree," *id.* at 286 (quoting *Hook v. Department of Ariz. Corrections*, 972 F.2d 1012, 1014 (9th Cir.1992)) (emphasis added) (internal quotation marks omitted). In so holding, the court reasoned that "consent decrees are generally construed according to the basic principles of contract law, and it is a fundamental principle of contract law that parties to a contract

may create enforceable contract rights in a third party beneficiary." *Id.* (citations omitted). Because the nonunion pilots were not incidental beneficiaries but instead "direct beneficiaries," as the trust provisions made clear, they could sue to enforce the consent decree. *Id.*

Although this result might have conflicted with a broad reading of the language in *Blue Chip*, the *Beckett* court distinguished *Blue Chip* based on five ·considerations to narrow the scope of the restriction on third party enforcement of consent decrees. Among its five considerations, the court observed that *Blue Chip* involved a consent decree resulting from a government enforcement action: "Only the Government can seek enforcement of its consent decrees; therefore, even if the Government intended its consent decree to benefit a third party, that party could not enforce it unless the decree so provided." *Id.* at 288 (citation omitted). Because application of this rule alone would have barred a third party from attempting to enforce the government consent decree in *Blue Chip*, the *Beckett* court concluded that *Blue Chip* should not be read so expansively that it would bar all third party enforcement of consent decrees. *See id.; see also Hook*, 972 F.2d at 1015.

· In *Rafferty v. NYNEX Corp.*, 60 F.3d 844 (D.C.Cir.1995), the court again addressed the enforcement rights· of third party beneficiaries of government consent decrees. In that case, the district court had granted summary judgment against a terminated employee who claimed he was fired because he knew his employer had violated a government consent decree and who alleged violations of antitrust laws and the consent decree, misrepresentation, wrongful discharge, and breach of contract. *See id.* at 846–47. .In affirming the judgment, the court held that the plaintiff could not enforce the terms of a consent decree that was the result of an antitrust enforcement action brought by the government: "Unless a government consent decree stipulates that it may be enforced by a third party beneficiary, only the parties to the

---

R.Civ P. 24(b). While appellants do fall within the ambit of the second criterion, their intervention would have no effect because they have no

standing to enforce the consent decree, as we explain herein.

decree can seek enforcement of it." *Id.* at 849 (citing *Beckett,* 995 F.2d at 288). The court further emphasized that the plaintiff was not an intended third party beneficiary of the consent decree. *See id.*

Struggling under the weight of this precedent, appellants contend nonetheless that they have a legally protected interest in enforcing the terms of a consent decree resulting from an SEC enforcement action. Appellants maintain that this court has never held squarely that *intended* third party beneficiaries, as distinct from *incidental* third party beneficiaries, cannot enforce a government consent decree when the decree establishes a process to resolve private damage claims including the prospective intervenors' claims. *Beckett,* appellants insist, only stated that *Blue Chip* might "perhaps" bar suits by third party beneficiaries of government consent decrees,[8] *see Beckett,* 995 F.2d at 289, while *Rafferty* only pronounced this in dictum.[9] Appellants suggest that the court should look for guidance to the Second Circuit's decision in *Berger v. Heckler,* 771 F.2d 1556 (2d Cir.1985), in which that court concluded that, in granting benefits to third parties in a consent decree, the government necessarily "agreed to the *enforcement* of the decree in favor of nonparties." *Id.* at 1567.

■ Appellants focus, to their detriment, on showing that there is no categorical bar against third party enforcement of consent decrees involving the government. This much is true; the fact that the government is involved is not in itself fatal to a third party enforcement effort. Rather, the key determination is whether the particular third party beneficiary who seeks to bring a claim based on alleged noncompliance with the consent decree is an intended beneficiary of the decree or only an incidental beneficiary. As the *Beckett* court indicated, the reason that courts are more loath to allow third parties to enforce consent decrees when the government is involved is that, because the

government usually acts in the general public interest, third parties are presumed to be incidental beneficiaries. *See Beckett,* 995 F.2d at 288 (citing Restatement (Second) of Contracts § 313(2) & cmt. a (1979)). Indeed, there could well be merit to appellants' argument that the lack of an express stipulation authorizing third party enforcement should not automatically preclude enforcement even of government consent decrees. The argument might be that the presence of the government should raise the presumption that third parties are incidental beneficiaries, but that presumption could be overcome by contrary evidence other than an express stipulation. When the court can determine the parties' intent from the consent decree, the fact that one of the parties is the government arguably should make little difference, and an express stipulation is not normally necessary to find that a third party is an intended beneficiary. *See* Fed.R.Civ.P. 71; *Beckett,* 995 F.2d at 287–88; *Berger,* 771 F.2d at 1565. Yet this circuit has opted for a bright line rule, effectively acknowledging both the sophistication of government agencies entering into consent decrees and the broad social significance of such decrees. *See Rafferty,* 60 F.3d at 849. In any event, contrary to appellants' position, the instant case presents no occasion for the court to reexamine its declarations in *Beckett* and *Rafferty* that third parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect. *Compare id.* ("Unless a government consent decree stipulates that it may be enforced by a third party beneficiary, only the parties to the decree can seek enforcement of it."); *Beckett,* 995 F.2d at 288 (same); *and Hook,* 972 F.2d at 1015 (same), *with Berger,* 771 F.2d at 1567 (allowing third party enforcement of consent decrees pursuant to Rule 71, without regard to the involvement of a government party). No matter the evidence we may require to show that third parties to government consent decrees are

---

8. Although the court did use the word "perhaps" once, the court elsewhere stated unequivocally (albeit without elaboration or further analysis) that "[o]nly the Government can seek enforcement of its consent decrees." *Beckett,* 995 F.2d at 288.

9. In fact, the court's conclusion that third party beneficiaries of government consent decrees cannot enforce those decrees was an integral step in the analysis in *Rafferty.* *See Rafferty,* 60 F.3d at 849.

intended beneficiaries, appellants cannot make this showing, and thus we leave for another day consideration of whether government authorization of third party enforcement must invariably be explicit.

■ Third parties to a consent decree, involving the government or not, must demonstrate that they are intended beneficiaries in order to have enforcement rights, and appellants fail to do so. Instead, they rely on the mistaken belief that a third party is an intended beneficiary if the parties to the consent decree had any intent to benefit that third party and that the clear intent in the consent decree to benefit defrauded investors thus necessarily gives them enforcement rights. To the contrary: a third party to a consent decree is not an "intended beneficiary" unless the parties "intended that a third. party should receive a benefit *which might be enforced in the courts.*" *Corrugated Paper Prods. v. Longview Fibre Co.,* 868 F.2d 908, 911 (7th Cir.1989) (quoting *Brooklawn v. Brooklawn Housing Corp.,* 124 N.J.L. 73, 11 A.2d 83 (1940)) (emphasis added); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 302(1). The test is not, as appellants appear to suggest, only whether the contracting parties intended to confer a benefit directly on the third parties, but also whether the parties intended the third party to be able to sue to protect that benefit.

■ The consent decree could hardly make clearer that the parties did not intend others to be able to enforce its terms in court. The Commission and Prudential stated in paragraph nine of the consent decree that "nothing herein shall be deemed to confer standing upon any persons other than plaintiff COMMISSION, defendant [Prudential] and the CLAIMS ADMINISTRATOR." Furthermore, in paragraph twelve of the decree, they added that, "[e]xcept as explicitly provided in this FINAL ORDER and the

CONSENT, nothing herein is intended to or shall be construed to have created, compromised, settled or adjudicated any claims, causes of action, or rights of any person whomsoever, other than as between the COMMISSION and [Prudential], in accordance with the CONSENT." It is difficult to imagine how the Commission and Prudential could have stated more explicitly that they did not want third parties enforcing the terms of the consent decree.[10] As the district court concluded, "the unambiguous language of the consent decree clearly establishes that the government did not intend for third parties to enforce the consent decree." When a consent decree or contract explicitly provides that a third party is not to have enforcement rights, that third party is considered an incidental beneficiary even if the parties to the decree or contract intended to confer a direct benefit upon that party. *See Morse/Diesel Inc. v. Trinity Indus., Inc.,* 859 F.2d 242, 249 (2d Cir.1988).

Despite appellants' protestations, their assertions of unfairness in this result are unpersuasive. The consent decree was the result of an agreement between the Commission and Prudential, and appellants' participation in the claims resolution process was voluntary. Appellants' right to bring their claims against Prudential to the courts was not affected by the consent decree; indeed, without the consent decree, appellants might have received no relief at all. *See supra* note 3. Furthermore, appellants did not have to settle or submit their initial settlement offers to binding arbitration if these offers were too low. They did or should have known at the time of the initial offers that Prudential was applying a method of calculation different from the one they now advocate was intended to be applied, and they could have exited the claims resolution process at that

---

10. Appellants' attempt to limit the meaning of these provisions is unconvincing. Appellants contend that paragraph nine is irrelevant because they do not rely on the consent decree for constitutional standing to bring their complaint. Paragraph twelve, appellants add, does not concern those in appellants' position, for their rights are among those "[e]xplicitly provided" in this

consent decree. Yet, paragraph nine clearly intends to use "standing" in the sense of enforceable rights under the consent decree, not in the constitutional sense, and paragraph twelve preempts any enforcement rights in third parties because none were "[e]xplicitly provided" elsewhere in the consent decree.

point, resorting to the courts for relief.[11] Instead, appellants now hope to bind the Commission and Prudential to their own interpretation of one portion of the consent decree's requirements while ignoring the consent decree's limitation of third party enforcement rights.

Because the parties to the consent decree clearly indicated that third parties such as appellants are not intended third party beneficiaries, appellants have no legally protected interest in enforcing the terms of the consent decree. Hence, they have no right to intervene in the proceedings between the Commission and Prudential to enforce the decree.

## III.

In the alternative, appellants contend that, even if they cannot sue to enforce the consent decree directly, they have a legally protected interest in the proceedings between the Commission and Prudential, and thus a right under Rule 24(a)(2) to intervene in the proceedings, based on their common law claims against Prudential on theories of contract, fraud, and unjust enrichment. A glance at the nature of these claims shows, however, that as the district court indicated, these claims are "inextricably intertwined with [appellants'] claim of noncompliance with the consent decree" and do not constitute a valid independent basis for intervention.

Appellants' common law claims turn on their allegation that Prudential violated the consent decree. In the contract claim, appellants allege that in representing to the investors that it would comply with the consent decree, Prudential made a separate offer to investors, which investors accepted for con-

sideration, thereby forming a contract separate from the consent decree itself but based on the same terms, and that Prudential violated this contract when it violated the consent decree. Similarly, in the fraud and unjust enrichment claims, appellants allege that by misrepresenting that it would conform to the terms of the consent decree, Prudential defrauded investors and was unjustly enriched. Fairly read, the complaint in intervention only seeks enforcement on the basis of the common law claims; there is no request for declaratory or similar relief.

These common law claims represent transparent attempts to avoid the effect of *Blue Chip* and its progeny. As the district court stated, "the actions [appellants] complain of arise out of alleged noncompliance with the consent decree." If third parties in appellants' position could bring such claims, then the *Blue Chip* line of cases would be eviscerated: any time a party to a consent decree indicated to a third party that it would abide by the consent decree, such third party could bring a claim in contract (as appellants attempt here) to enforce the terms of the consent decree. If the court will not permit consent decree enforcement claims, it cannot permit the same invalid claims dressed in new formalist attire. Hence, it follows that appellants' common law claims must fail.[12] *Cf. Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir.1992).

Appellants contend that to disallow such claims would unfairly immunize parties to consent decrees against all ordinary claims by nonparties relating to performance under such decrees, but this is not true as a broad proposition. If appellants asserted genuinely independent common law claims, they could

---

11. Even accepting their assertion in support of the motion to intervene that Prudential's refusal to disclose its working papers prevented immediate discovery of its methodology, appellants do not explain why knowledge of this methodology was necessary for them to know what their settlement offers should have been under the terms of the consent decree; in particular, because their claims were for fairly large amounts of money, it is reasonable to assume some vigilance on their part.

12. Appellants maintain, unpersuasively, that *Beckett* and *Rafferty* establish that such common law claims are independently viable. In *Beckett,*

the court did consider claims raised by the plaintiffs other than their claim for noncompliance with the consent decree, but this is unenlightening, for the court in that case decided that the plaintiffs *could* enforce the decree as intended third party beneficiaries. *See Beckett,* 995 F.2d at 284–89. In *Rafferty,* the court refused to allow the plaintiff to enforce the terms of a consent decree yet did address the merits of other claims, but these other claims were substantively different from and not simply restatements of the noncompliance claim. *See Rafferty,* 60 F.3d at 849–51.

press them. As counsel for the Commission conceded at oral argument, there are still instances when third parties may bring independent claims based on malfeasance by the parties to a consent decree: for instance, when a third party can substantiate allegations of fraud. By contrast, a disagreement over the proper interpretation of a decree's terms, as is present here, does not present a circumstance in which third parties can avoid the force of *Blue Chip* and its progeny.

Much as appellants have no valid interest in enforcing the terms of the consent decree directly, they have no valid interest in doing so by repackaging a noncompliance claim in the shells of common law contract, fraud, and unjust enrichment. Accordingly, because appellants have no legally protected interest in the proceeding between the Commission and Prudential, we affirm the district court's order denying their motion to intervene under Rule 24(a)(2) or 24(b).