**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiffs,**

**Iran Bennett, Charles Brown, Leroy Pratt, Fitzroy Trancoso, Angel Vasquez, Plaintiff–Intervenors,**

v.

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, LOCAL 580, Defendant.**

No. 71 Civ. 2877(RLC).

United States District Court, S.D. New York.

April 18, 2001.

Ramon J. Jimenez (Ramon J. Jimenez, of counsel), Bronx, NY, for Plaintiffs.

Colleran, O'Hara & Mills (Edward J. Groarke, Denis Engel, of counsel), Garden City, NY, for Defendant.

*OPINION*

Robert L. CARTER, District Judge.

Iran Bennett ("Bennett"), Charles Brown ("Brown"), Leroy Pratt ("Pratt"), Fitzroy Trancoso ("Trancoso"), and Angel Vasquez ("Vasqez") ("union members") move to hold Local 580 in contempt for failing to comply with provisions of a consent judgment and subsequent court orders. Defendant, International Association of Bridge, Structural and Ornamental Ironworkers, Local 580 ("Local 580" or "union"), opposes this motion and cross-moves to dismiss based on union members': (1) lack of standing; (2) insufficiency of pleading; and (3) failure to exhaust contractual remedies. In the alternative, Local 580 requests time to conduct discovery, and thereafter, an evidentiary hearing.

**Background**

The background of this case has been documented in detail in previous opinions of the court and the Second Circuit, familiarity with which is presumed. It is sufficient to note that the court issued a Consent Judgment on July 20, 1978, enjoining Local 580 from engaging in discriminatory practices and ordering the establishment of an affirmative action program. *See EEOC v. Local 580, et al.*, No. 71 Civ. 2877, Consent Judgment (S.D.N.Y. July 20, 1978) (Werker, J.) (annexed to Lusardi Aff. at Ex. A) ("Consent Judgment"). On September 11, 1987, the court found Local 580 and its Joint Apprentice–Journeyman Education Fund ("AJEF") in contempt of court for noncompliance with provisions of the Consent Judgment in operation of the apprenticeship program. *See EEOC v. Local 580, et al.*, 669 F.Supp. 606 (S.D.N.Y.1987) (Carter, J.), *aff'd*, 925 F.2d 588 (2d Cir.1991). The court issued an

order on April 15, 1988 (corrected on May 3, 1988), permanently enjoining Local 580 and the AJEF from discriminating against non-whites in the creation and operation of the apprenticeship program. *See EEOC v. Local 580, et al.*, No. 71 Civ. 2877, Corrected Order (S.D.N.Y. May 3, 1988) (Carter, J.) (annexed to Lusardi Aff. at Ex. B) ("Apprentice Order"), *aff'd*, 925 F.2d 588 (2d Cir.1991). The order also provided for back pay hearings, ordered the development of a record-keeping system to monitor compliance with the court's orders, provided for the appointment of a Special Master, and imposed other remedial measures.

On December 16, 1988, the court again found Local 580 and the AJEF in contempt of court for noncompliance with provisions in the Consent Judgment relating to journeyman workers. *See EEOC v. Local 580, et al.*, 1988 WL 131293 (S.D.N.Y. Dec. 1, 1988) (Carter, J.), *aff'd*, 925 F.2d 588 (2d Cir.1991). On August 28, 1989, the court ordered that the apprentice back pay hearings be expanded to include journeymen and applicants to the journeyman program who had been discriminated against by Local 580. *See EEOC v. Local 580, et al.*, No. 71 Civ. 2877, Order and Judgment (S.D.N.Y. Aug. 28, 1989) (Carter, J.) (annexed to Lusardi Aff. at Ex. C) ("Journeyman Order"). On December 6, 1991, the court granted final approval of the parties' settlement of back pay claims. *See EEOC v. Local 580, et al.*, No. 71 Civ. 2877, Stipulation, Order and Judgment Pursuant to Federal Rule of Civil Procedure 54(b) Granting Final Approval of Settlement of Back Pay Claims (S.D.N.Y. Dec. 6, 1991) (Carter, J.) (annexed to Lusardi Aff. at Ex. D) ("Back Pay Order").

On September 11, 1998, union members moved as alleged plaintiff-intervenors and as third-party beneficiaries for an order finding Local 580 in civil contempt of the

court's Consent Judgment and Apprentice and Journeyman Orders. All union members except Trancoso have pending charges with the Equal Employment Opportunity Commission ("EEOC"). (Pls.' Mem., p. 8; Def.'s Mem., p. 5.) Brown, Vasquez and Pratt have also filed charges with the National Labor Relations Board ("NLRB"). (*Id.*) Trancoso has filed an inquiry with the Department of Labor, Pension and Welfare Benefit Administration. (*Id.*) Union members also allegedly filed complaints with the court-appointed Special Master in the case, David Raff. (Pls.' Mem., p. 8.) The EEOC commenced an investigation into Local 580's compliance with the applicable court orders, which remains pending.

### Discussion

### I.

### A.

■ Local 580 challenges union members' standing to enforce the court's Consent Judgment and subsequent orders on several grounds. First, Local 580 contends that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The *Blue Chip* decision involved a consent decree entered in an antitrust case involving incidental third-party beneficiaries. The Second Circuit has limited *Blue Chip,* finding that non-parties may move to enforce a consent decree "where otherwise authorized by the federal rules of civil procedure," such as Rule 24 or Rule 71. *See Berger v. Heckler,* 771 F.2d 1556, 1565 (2d Cir.1985).

### B.

■ Next, Local 580 contends that union members lack intervenor status in the case because they have failed to satisfy the procedural requirements of Rule 24, F.R. Civ. P. Under Rule 24, a party seeking to intervene in a case must serve motion papers on all parties "stat[ing] the grounds therefor ... accompanied by a pleading setting forth the claim or defense for which intervention is sought." F.R. Civ. P. 24(c). Since union members never officially filed a motion to intervene accompanied by a complaint, they have failed to meet the formal requirements of Rule 24. Nonetheless, a district court may disregard technical defects in a motion to intervene where the pleading states a legally cognizable claim for relief and the defects do not prejudice any of the parties. *See* 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1914, at 413–16 (1986); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F.Supp. 870, 874 (S.D.N.Y.1991) (Tenney, J.).

Here, union members have submitted affidavits and briefs setting forth facts and allegations sufficient to establish a legally cognizable claim for contempt. Moreover, Local 580 was not prejudiced by union members' failure to file a formal motion to intervene since it was served with union members' Notice of Motion for Contempt, which labels union members as intervenors, and union members' Memorandum of Law, which states that union members "seek intervenor status." (Pl.'s Mem., p. 14.) Therefore, the court will treat the motion for contempt as also a motion to intervene. *See* F.R. Civ. P. 8(e)(1), (f); *Farina v. Mission Inv. Trust,* 615 F.2d 1068, 1075 (5th Cir.1980) (finding it within district court's discretion to treat motion to remove as also a motion to intervene).

### C.

Although the court may overlook procedural shortcomings, union members must still meet the requirements for interven-

tion set out in Rule 24. Under Rule 24(b)(2), an applicant may be permitted to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common."[1] F.R. Civ. P. 24(b)(2). In addition, the proposed intervenor must show that the application was timely and that intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." F.R. Civ. P. 24(b). Lastly, a party seeking intervention under Rule 24(b)(2) must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action. *See* F.R. Civ. P. 82; *National Am. Corp. v. Federal Republic of Nigeria*, 425 F.Supp. 1365, 1368 (S.D.N.Y.1977) (Goettel, J.).

Here, union members other than Trancoso allege that they are qualified members of Local 580, that Local 580 has failed to abide by the terms of the Consent Judgement and subsequent court orders, and that as a result of Local 580's continued discriminatory practices, they have been denied equal employment. These allegations suffice to set forth questions of fact and law common to the original Title VII action and subsequent court orders.

Trancoso's complaint is different. He alleges that he has been denied a disability pension because the union's poor record-keeping system fails to indicate that he has worked for at least ten pension years. (Trancoso Aff. ¶ 6.) Assuming, *arguendo*, that Local 580 kept poor employment records, in the absence of statements to the contrary the court must assume that poor records were kept for both whites and non-whites. As such, Trancoso has failed to explain how non-white union members face greater injury from poor records at the pension stage than white union members. Therefore, this claim does not set forth a common question of law because it fails to allege a claim of discrimination. Trancoso also alleges that "I have witnessed other non-minorities receive their pension credits and believe my pension is being denied based on my race." (Trancoso Aff. ¶ 7.) This claim likewise fails because it is essentially a claim against the Local 580 Pension Benefit Fund, a separate legal entity who was not a party to the court's orders.[2] Therefore, Trancoso's motion to intervene fails to meet the first requirement for permissive intervention.

As to the second and third requirements of timeliness and prejudice, the court notes that union members' contempt motion was made seven years after the Back Pay Order. However, union members assert that they "have attempted to exhaust contractual remedies for over seven years by reporting incidents of discrimination" to the EEOC, the NLRB and the Special Master. (Pls.' Mem., pp. 6, 8; EEOC Letter of Oct. 8, 1999 ("EEOC Letter").) The court therefore finds that union members' application to the court is timely. *See NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) ("Timeliness is to be determined from all the circumstances."). The court further finds that the union members' contempt motion will not cause prejudice or

---

1. Union members do not differentiate between intervention under Rule 24(a) or 24(b). Therefore, the court will analyze their right to intervene under Rule 24(b), permissive intervention. *See Techcapital Corp. v. Amoco Corp.*, 2001 WL 267010, at *3 (S.D.N.Y. March 19, 2001) (Schwartz, J.) ("The Court does not reach the issue of intervention as of right because it concludes that permissive intervention under Rule 24(b) is appropriate.").

2. Local 580 asserts that the Local 580 Pension Fund is a "separate and distinct legal entity" and "not a party to these proceedings." (Def.'s Mem., p. 25.) Union members do not dispute these contentions.

delay to the original parties, since there are no other pending settlements or motions in the case. *Cf. Farmland Dairies v. Comm'r of N.Y. Dept. of Agriculture*, 847 F.2d 1038, 1044 (2d Cir.1988) (upholding denial of post-judgement intervention where intervention would have jeopardized settlement).

Lastly, the court has independent jurisdiction over plaintiff's private party Title VII action pursuant to 42 U.S.C. § 2000e–5 ("section 2000e–5"). Nonetheless, union members must indicate their compliance with the statutory prerequisites of section 2000e–5. *See EEOC v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir.1986). Section 2000e–5 provides that private parties must file timely discrimination charges with the EEOC and receive a right to sue letter prior to bringing a Title VII action in federal court. *See* 42 U.S.C. §§ 2000e–5(b), (e), (f). The EEOC is obligated to issue a right to sue letter if it dismisses a charge or if within "one hundred and eighty days from the filing of such charge . . . [it] has not filed a civil action." 42 U.S.C. §§ 2000e–5(f)(1). Noncompliance with the prerequisites of section 2000e–5 may be excused by equitable considerations. *See id.* at 887 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).

As noted above, all union members except Trancoso filed timely charges with the EEOC. The EEOC, in a letter to the court dated October 8, 1999, acknowledged that in investigating those charges it found "reasonable cause to believe that Local 580 has discriminated against certain of those charging parties by failing or refusing to refer the nonwhite workers to jobs based on their race." (EEOC Letter, p. 1.) The EEOC requested that the court consider the contempt motion alongside its proposed Order to Show Cause, "[b]ecause the issues [raised] . . . are substantially similar." (*Id.*, p. 2.) Eighteen months later, the EEOC has neither filed an Order to Show Cause nor issued a right to sue letter. Therefore, the court finds that, except for Trancoso, union members' noncompliance with section 2000e–5 is excused by the EEOC's inaction.

Accordingly, all union members except for Trancoso have standing as plaintiff-intervenors.[3] Trancoso's motion to intervene is dismissed without prejudice.

### D.

Even if union members could not obtain standing to enforce the court's orders as plaintiff-intervenors, they would have standing to enforce the court's orders pursuant to Rule 71, F.R. Civ. P. Under Rule 71, a non-party "may enforce obedience" to a court's order if he is an intended beneficiary of the order and if he has standing, i.e. if his complaint comes within the zone-of-interests protected by the order. *See* F.R. Civ. P. 71; *Moore v. Tangipahoa Parish School Bd.*, 625 F.2d 33, 34–35 (5th Cir.1980) (per curiam) (finding that to enforce judgment under Rule 71, non-party

---

**3.** The court notes that all union members except Trancoso may also intervene pursuant to Rule 24(a)(2), F.R. Civ. P., since they meet the four requirements for intervention as of right: (1) union members' application was timely; (2) they claim an interest in the subject of the action, namely Local 580's compliance with the court's orders; (3) continued non-enforcement of the court's orders will impede union members' right to equal employment opportunity; and (4) the union

members' interests are not adequately represented by the EEOC. *See American Lung Ass'n v. Reilly*, 962 F.2d 258, 261 (2d Cir.1992) (listing four requirements); *South v. Rowe*, 759 F.2d 610 (7th Cir.1985) (granting intervention as of right to third-party beneficiary of consent decree moving for contempt). Trancoso may not intervene as of right since, as discussed above, his complaint does not claim an interest in the subject of the action.

must have standing under zone-of-interests test), *cited with approval in Berger v. Heckler*, 771 F.2d at 1565 n. 13.

■ Here, the Consent Judgment and subsequent orders are intended to benefit all present and future non-white members of Local 580, a class which includes the moving parties.[4] Likewise, all union members' complaints, except for Trancoso's, come within the zone-of-interests protected by the orders because union members seek to enforce the court's injunction against discrimination and the court-ordered hiring and record-keeping programs meant to eliminate racial discrimination in union employment. (As discussed above, Trancoso's claim fails to fall within the same zone-of-interests because it does not allege a claim of discrimination against Local 580.) Therefore, pursuant to Rule 71, all union members except Trancoso are entitled to enforce obedience to the court's orders.[5]

### E.

■ Notwithstanding the above, Local 580 asserts that union members are ineligible to bring a third-party enforcement order because the original parties to the order did not intend for them "to be able to sue to protect [the] benefit." *S.E.C. v. Prudential Sec.*, 136 F.3d 153, 159 (D.C.Cir.1998). In *Prudential*, the D.C. Circuit found that "[w]hen a consent decree or contract explicitly provides that a third party is not to have enforcement rights, that third party is considered an incidental beneficiary even if the parties to the decree or contract intended to confer a

direct benefit upon that party."[6] *Id. Cf. Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2d Cir.1988). Incidental beneficiaries of a consent decree may not enforce its terms. *See Prudential*, 136 F.3d at 157.

■ Local 580 contends that based on *Prudential*, union members lack standing to enforce the decree. Local 580 points to language in Article IV, Paragraph Twenty of the decree which dictates that the "EEOC may apply to the court for appropriate relief" if the union's hiring procedure continues to have a discriminatory effect on non-whites. (Consent Judgment, p. 37.) Likewise, Article VI, Paragraph One states that "any of the parties hereto or their successors, may apply to the Court for the purpose of seeking additional orders to insure the full and effective implementation of the terms and intent of this judgment." (*Id.*, p. 38.) Local 580 asserts that under this language only original parties to the decree may bring suit to enforce the decree.

A similar situation was addressed by the court in *EEOC v. Local 40*, 885 F.Supp. 488, 494–95 (S.D.N.Y.1994) (Carter, J.), *rev'd on other grounds*, 76 F.3d 76 (2d Cir.1996). There, ironworkers brought contempt proceedings against a union, alleging that the union violated a Title VII consent judgment. The consent judgment contained language indicating that if the parties are unable to resolve a dispute over an alleged violation of the order, "the EEOC may move the court to resolve the

---

4. *See supra* note 10.

5. The cases cited by Local 580 do not compel a different conclusion. *See Cicirello v. New York Tel. Co.*, 123 F.R.D. 523, 526 (E.D.Pa. 1989) (finding that third party beneficiary could not enforce consent decree); *Rule v. International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 396*, 423 F.Supp. 373, 381 (E.D.Mo.1976), *aff'd in part and va-*

*cated in part*, 568 F.2d 558, 565 n. 10 (8th Cir.1977) (same). Those cases arose in the Third and Eighth Circuits, and are not binding on the court.

6. Contrary to Local 580's assertions, the D.C. Circuit left unresolved "whether government authorization of third party enforcement must invariably be explicit." *Prudential*, 136 F.3d at 159.

dispute." *Id.* at 494. The court explained that the paragraph "does not state that other parties may not seek relief from the court, and thus it does not purport to prescribe the sole manner in which the judgment may be enforced." *Id.* at 495. Here as well, the language of the Consent Judgment does not vest an exclusive right of enforcement in the original parties. While the Consent Judgment provides that the "parties" and the "EEOC may apply to the court," nowhere does it dictate that a third-party is not to have enforcement rights.

## F.

Next, Local ·580 points to language in the Back Pay Order, Paragraph Five, which provides:

> Upon entry, this Stipulation, Order and Judgment shall supercede the Apprentice and Journeyman Orders, the Consent Judgment entered on July 21, 1978 and all other orders and judgments of the Court to the extent those orders and judgments provided individual relief for minority members of or applicants to Local 580 or to the AJEF apprentice program because of alleged discrimination or retaliation by defendants or because of defendants' failure to comply with the Consent Judgment and other orders of the Court.

(Back Pay Order, p. 6.) Local 580 contends that pursuant to this paragraph, all previous court orders are superceded by the Back Pay Order to the extent that they provide any form of individual relief, past, present or future. Therefore, individuals such as union members seeking relief under previous orders must proceed in the manner prescribed by the Back Pay Order: they must bring their claims to the Special Master, whose decision may then be appealed to the court. (Back Pay Order, p. 5.)

Consent decrees such as the Back Pay Order are interpreted according to principles of contract law. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). "In construing a contract the court should adopt a construction, if reasonable, which gives meaning to every word the parties use." *Meighan v. Finn*, 146 F.2d 594, 595 (2d Cir.1944), *aff'd*, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945). The court may rely on normal aids to construction, such as "the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *Berger*, 771 F.2d at 1568. Any ambiguity must be resolved by the court "in a manner that best accords with the sense of the remainder of the contract." *Taitt v. Chemical Bank*, 810 F.2d 29, 32 (2d Cir.1987) (internal quotation and citation omitted).

Here, the caption of the Back Pay Order makes clear that the order was issued pursuant to Rule 54(b), F.R. Civ. P., which allows a court to "direct the entry of a final judgment as to one or more but fewer than all of the claims." The purpose of the Back Pay Order is therefore *limited* to resolution of the union's obligation to provide back pay relief. Back pay relief, in turn, was formulated for the limited purpose of compensating individuals for past discrimination and retaliation. Individuals receiving back pay were obligated to sign release forms, "forever discharg[ing] Local 580 from any and all claims and charges of discrimination or retaliation against Local 580 ... that the Releasor had, has or may have from the beginning of time to the date of this Release and Agreement Not to Sue." (Lusardi Aff., Ex. E ("Release Agreement"), p. 1.) Together, the Back Pay Order and the

accompanying Release Agreements quell the right to individual relief for all discrimination suffered prior to their execution. Paragraph Five effectuates this limited purpose by extinguishing the parties' right to obtain individual relief for past discrimination pursuant to earlier orders.

This interpretation is further compelled by the parties' choice of the past tense for the term "provided." The Back Pay Order supercedes earlier court orders only to the extent that they already *provided* individual relief, i.e., for wrongs that occurred prior to the Back Pay order. The Back Pay Order is not meant to extinguish the earlier court orders to the extent that they continue to provide individual relief for present and future wrongs.[7]

Conversely, interpreting Paragraph Five in the manner suggested by Local 580 would allow an ancillary limited-purpose court order to impose its own internal grievance mechanism on all future grievances arising under any of the previous court orders. This interpretation does not accord with the sense of the remainder of the Back Pay Order. If the parties had wanted the dispute resolution method outlined in the Back Pay Order to supercede all previous dispute resolution methods, the appropriate place to have indicated that would have been Paragraph Three of the Back Pay Order, which deals with dispute resolution. However, Paragraph Three carefully limits its reach to disputes arising under "this Stipulation, Order and Judgment." (Back Pay Order, p. 5.) Paragraph Three also limits its reach to motions of any "aggrieved claimant," a specific reference to back pay claimants. (*Id.*) If the paragraph had been meant to apply to all previous court orders, more general language such as "aggrieved individual" should have been used.

In sum, the court finds that the Back Pay Order does not extinguish the right to pursue individual relief under earlier court orders for discriminatory acts occurring after December 1, 1991, the date of the Back Pay Order.

## II.

### A.

Local 580 next contends that union members' motion for contempt is insufficient under Rule 7(b)(1), F.R. Civ. P., and S.D.N.Y. Local Rule Civ. P. ("Local Rule") 83.9, both of which require that plaintiff's motion state with "particularity" the alleged misconduct.[8]

Rule 7(b)(1) and Local Rule 83.9 are "designed to afford [the opposing party] ... with a meaningful opportunity to respond and the court with enough information to process the motion correctly." *People United for Children, Inc. v. City of New York, et al.*, 108 F.Supp.2d 275, 301 n. 21 (S.D.N.Y.2000) (Ward, J.) (internal quotations and citations omitted). Therefore, when a motion is challenged for lack of particularity the question for the court is "whether any party is prejudiced by a lack

---

7. Local 580 further contends that because the Back Pay Order extinguishes the right to individual relief, it deprives the court of subject matter jurisdiction over individual claims. For the reasons discussed above, the court finds this contention without merit. *See EEOC v. Local 580 et al.*, 925 F.2d 588, 593 (2d Cir.1991) (finding that district court has continuing jurisdiction to enforce Local 580 Consent Judgment).

8. Local 580 also asserts that union members failed to "set forth the relief or order sought." F.R. Civ. P. 7(b). The court finds that union members have provided ample notice of the relief sought, namely: a declaratory judgment finding Local 580 in contempt of the Consent Judgment and the Apprentice and Journeyman Orders, and new back pay proceedings to cover monetary losses. (Pls.' Motion for Contempt; Jimenez Aff. ¶¶ 11–12; Pls.' Mem., pp. 5, 8, 17, 19.)

of particularity or 'whether the court can comprehend the basis for the motion and deal with it fairly.'" *Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807–08 (Fed.Cir.1990) (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1192, at 42 (1990)). The particularity requirement must be understood flexibly in "recognition of the peculiar circumstances of the case." *Id.* at 808.

▇ In the instant case union members allege that Local 580 has discriminated against them by failing to maintain an equitable system for distributing jobs. Specifically, the union members allege that Local 580 has violated the court's orders by: (1) failing to institute a record-keeping system; (2) failing to distribute jobs through the hiring hall; (3) continuing to use telephone referrals as a way of rewarding white members; and (4) withholding jobs in possible retaliation for involvement in equal employment litigation.[9] (Jimenez Aff. ¶¶ 4–5, 7–8; Bennett Aff. ¶ 5.) Union members allege that these discriminatory actions and omissions occurred continually from approximately 1991 to 1998. (Brown Aff. ¶ 4; Bennett Aff. ¶ 4; Pratt Aff. ¶ 4; Vasquez Aff. ¶ 4.) Since the bulk of the discriminatory practices alleged are omissions rather than actions, a range of years in which those omissions

continued is sufficient. Local 580's own records, to the extent they have been kept in accord with the strictures of the Consent Judgment, "undoubtedly will reveal . . . the vital information needed to understand what the claim is about and how to answer it." *Frazier v. Southeastern Pa. Trans. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986). As for Local 580's alleged continued use of telephone referrals, since the union members were not privy to these referrals, they may not be expected to set forward more specific dates and times absent discovery. Under the liberal concept of notice pleading embodied in the Federal Rules, the court is satisfied that these allegations are adequate.[10]

### B.

Local 580 next contends that union members have not complied with Rule 10(a), F.R. Civ. P., because they did not list the EEOC in the case caption, and they titled themselves plaintiff-intervenors in the action before obtaining such status. Rule 10(a) requires that every pleading "contain a caption setting forth . . . the title of the action." The title must contain "the name of the first party on each side with an appropriate indication of other parties." F.R. Civ. P. 10(a).

---

9. Although union members do not connect each of these violations to specific sections of the Consent Judgment and subsequent court orders, their motion makes general reference to the Consent Judgment and the Apprentice and Journeyman Orders. (Pls.' Motion for Contempt; Pls.' Mem., pp. 7–9, 17, 19.) Given the prolonged history of the case, the court presumes that Local 580 has sufficient familiarity with these court orders so as to locate the applicable provisions. (Consent Judgment, pp. 30–34; Apprentice Order, pp. 2, 13–16; Journeyman Order, pp. 15–21.)

10. Local 580 also claims that union members failed to allege contempt with requisite particularity because they did not identify themselves as non-whites. First, the court notes that three of the union members, Brown, Pratt and Trancoso, identify themselves as members of the class that brought the original discrimination lawsuit against the union. (Jimenez Aff. ¶ 3.) Second, given the prolonged history of the case, the parties repeated interaction, and the nature of the charges brought, the court is satisfied that union members' non-white status is easily inferred from the pleadings, and that no prejudice resulted from union members' failure to explicitly so identify themselves.

■ The purpose of Rule 10(a) is to provide "clear notice as to the parties in an action." *Rosasa v. Judson River Club Rest.*, 1997 WL 316719, at *2 (S.D.N.Y. June 10, 1997) (Keenan, J.). However, "the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim." *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F.Supp. 104, 109 (E.D.N.Y.1995) (citing *Prisco v. State of New York*, 804 F.Supp. 518, 521 (S.D.N.Y.1992) (Carter, J.)). "The caption, pleadings, service of process and other indications of the intent of the pleader, are evidence upon which a district court will decide, in cases of doubt, whether an entity has properly been made a party to a lawsuit." *Id.* at 109 (citation omitted).

■ When intervenors bring suit under Rule 24, the caption of the case must generally contain the name of the original party. *See, e.g., South v. Rowe*, 759 F.2d 610 (7th Cir.1985) (action to intervene brought in name of original plaintiff). On the other hand, when third-parties bring suit under Rule 71, courts generally allow the actions to proceed under the names of the third-parties. *See, e.g., Cicirello v. New York Tel. Co.*, 123 F.R.D. 523 (E.D.Pa.1989) (action to enforce consent decree brought by third-party beneficiary in own name). Here, the court has found that union members may bring suit under either Rule 24 or Rule 71, and therefore union members' use of their own names in the caption was not error. Moreover, even if the union members' caption was in error, as long as the plaintiff is sufficiently identified, such error is not considered fatal. *See Frank C. Gaides, Inc. v. Provident*

*Life & Accident Ins. Co.*, 1996 WL 497085, at *2 (E.D.N.Y. Aug. 26, 1996) (finding that where party is "sufficiently identified in the body of the complaint . . . the action may proceed."). Here, the identity of the moving parties and their relationship to the EEOC, the original plaintiff, is clear from the cumulative pleadings. Therefore, the court finds that no prejudice resulted from union members' use of their own names, or the identifier plaintiff-intervenors, in the pleadings' caption. As further clarification, the court hereby amends the caption of this action to include the EEOC, as shown on the first page of this Opinion.[11]

### C.

■ Local 580 also asserts that union members have failed to comply with Local Rule 7.1, which requires that all motions submitted to the court be accompanied by a memorandum of law. "Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." Local Rule 7.1. Union members corrected this error by submitting a memorandum of law on September 25, 1998. Therefore, in the interest of justice, the court will not dismiss union members' motion on this ground.

### III.

■ Lastly, Local 580 asserts that union members have failed to bring their claim before the Special Master before bringing their claim to the court. As noted above, consent judgments must be interpreted in such a way as to render each

---

11. As discussed above, the EEOC promised to proceed in this case in October, 1999. Having waited for the EEOC's Order to Show Cause for over eighteen months, the court is now compelled to proceed with the union members' motion to intervene before it.

Since the court is uncertain which role, if any, the EEOC will choose to maintain in this action in the future, the court finds it appropriate to retain the EEOC as plaintiff in the case caption.

part of the agreement meaningful and effective. *See Matter of National Basketball Ass'n,* 630 F.Supp. 136, 140 (S.D.N.Y. 1986) (Carter, J.). Both the Apprentice and Journeyman Orders empower the Special Master to "take appropriate steps to determine whether the Consent Judgment or this order is being violated" upon "the request of any party or third-party beneficiary of this order." [12] (Apprentice Order, p. 5; Journeyman Order, p. 12.) This language creates an additional mechanism for the resolution of grievances; it in no way limits the right of aggrieved third-party beneficiaries to bring their claims directly to the court. *See* Consent Judgment, p. 38 ("[T]he Court will retain jurisdiction to assure compliance with this judgment.").

## CONCLUSION

Bennett's, Brown's, Pratt's and Vasquez's motion to intervene is granted. Trancoso's motion to intervene is dismissed without prejudice. Local 580's cross-motion to dismiss is denied. The court will schedule a conference of all of the parties, including the EEOC, to clarify the steps that must be taken for this matter to proceed to a resolution.

**IT IS SO ORDERED.**

---

12. The only order which limits the rights of third-parties to proceed to the court directly is the Back Pay Order. (Back Pay Order, p. 5.) As discussed above, the grievance mechanism in the Back Pay Order is limited to back pay disputes.